754 So.2d 776 (2000)
Dante Mortel McCRAY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-1099.
District Court of Appeal of Florida, Third District.
March 15, 2000.
*777 Bennett H. Brummer, Public Defender and Suzanne M. Froix, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Frank J. Ingrassia, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J. and GREEN and FLETCHER, JJ.
GREEN, J.
Dante Mortel McCray appeals the revocation of his community control sentence. We reverse.
On January 14, 1997, McCray entered a guilty plea to the crimes of manslaughter, burglary and grand theft. The trial court sentenced him to the Dade County Boot Camp to be followed by two years of community control and three years of probation. On January 13, 1999, the state filed an affidavit of violation of community control wherein it was alleged that McCray violated a condition of his community control order:
[b]y failing to remain confined to his approved residence except for one half hour before and after his approved employment, public service work, or any other activity approved by his Community Control Officer, in that, on January 11, 1999, at 10:43 p.m., the Controlee was away from his approved residence without the consent of his Community Control Officer.
A revocation hearing was held on this matter. The evidence revealed that on the date of the alleged violation, McCray was required to be home from work by 8:30 p.m. or to telephone his community control officer, Kymberly May, to explain his absence. McCray left work at approximately 6:00 p.m. but began to experience car trouble when his car overheated while en route home.
McCray testified that after his car began to smoke, a passing motorist assisted him in pushing his car to the side of the road. McCray then walked to a nearby telephone booth but realized that he did not have any money to place a call. McCray testified that he could not telephone May because her office had closed at 5:30 p.m. and although he had May's pager number, it was impossible for him to place a collect call to a pager.
McCray did place a collect call to his mechanic, Veoliga Fenney, who had repaired his car a week earlier. McCray informed Fenney that his car was smoking and he needed assistance. Fenney did not have a tow truck so he contacted a friend who had a truck and together they went to assist McCray. It took Fenney and his friend some time to locate McCray because they were both unfamiliar with the area where McCray was stranded.
Fenney testified that upon his arrival, he examined McCray's car and concluded that a broken radiator hose was causing the car to smoke. However, Fenney could not repair the car at the time because the car was still too hot to work on, so Fenney's friend towed the car to Fenney's house. Fenney testified that McCray was in a rush to have his car repaired. Fenney made some repairs to the car and he and McCray drove it to McCray's home where Fenney and McCray continued to work on the car. Fenney testified that community control officer, May, drove up shortly after their arrival and they attempted to explain to her why McCray had not been home earlier but May was unwilling to listen.
May testified that McCray was due to be home at 8:30 p.m. on the date of the alleged violation but that he wasn't there when she paid him a visit at 10:30 p.m. May admitted that upon her return to McCray's home later that evening, she found him and another man outside working on a car. May further testified that as soon as McCray saw her, he explained that his car had broken down as he was traveling home and that Fenney had repaired it before he came home.
At the revocation hearing, the state argued that McCray should have kept thirty-five *778 cents on his person at all times to place a call in case of an emergency. The state further pointed out that McCray has an aunt who is a community control officer and who knows May, but McCray failed to telephone his aunt collect in order that she might contact May.
The trial court adjudicated McCray guilty of violating the terms of his community control and revoked it accordingly. McCray asserts, and we agree, that the trial court abused its discretion in revoking his community control where the evidence failed to establish a willful violation.
A violation of community control which triggers revocation must be both willful and substantial; moreover, the willful and substantial nature of the violation must be supported by the greater weight of the evidence. See Bissman v. State, 746 So.2d 489, 490 (Fla. 2d DCA 1999); Jones v. State, 744 So.2d 537, 538 (Fla. 2d DCA 1999); Smith v. State, 705 So.2d 1033, 1034 (Fla. 3d DCA 1998).
McCray's failure to be confined at his home at the prescribed hour due to the unexpected breakdown of his car cannot be deemed a willful violation of his community control. See Stevens v. State, 599 So.2d 254 (Fla. 3d DCA 1992). Moreover, we think that his failure to keep sufficient funds on hand to enable him to make an emergency telephone call or his failure to have the presence of mind to attempt to contact his community control officer through his aunt is, at best, evidence of ineptitude or negligence. Inept or negligent conduct, however, is insufficient to demonstrate a willful violation. See Dassau v. State, 731 So.2d 86, 86 (Fla. 3d DCA 1999); Stevens, 599 So.2d at 255.
Thus, based upon the foregoing, we reverse the revocation order and sentence and remand with directions that McCray's community control be reinstated.
Reversed and remanded.