760 So.2d 1138 (2000)
Leon THOMAS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1234.
District Court of Appeal of Florida, Fifth District.
July 7, 2000.
*1139 James B. Gibson, Public Defender, Marvin F. Clegg, and William Bookhammer, Assistant Public Defenders, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, J.
Leon Thomas, Jr., appeals an order finding that he violated two conditions of his probation. Specifically, the trial court found that he changed his approved residence without permission of his probation officer and that he committed sexual battery. As a result, Thomas' probation was revoked and he was sentenced to 165 months in the Department of Corrections.

Change of Residence
Thomas' original approved residence was at his mother's home, but he sought and obtained permission from his parole officer to change it to his girlfriend's home. Because of a domestic quarrel over Thanksgiving weekend, he moved back to his mother's home where the parole officer located him on the Monday following Thanksgiving. Thomas explained to the officer that he had attempted to call him at his office, but was unsuccessful because of the long holiday weekend. Based upon the facts, the trial court found that Thomas had violated the condition that he obtain approval before changing his residence.
A violation of probation sufficient to revoke the probation must be both willful and substantial, and the willful and substantial nature of the violation must be supported by the greater weight of the evidence. See, e.g., Inman v. State, 684 So.2d 899 (Fla. 2d DCA 1996); Sanders v. State, 675 So.2d 665 (Fla. 2d DCA 1996); Green v. State, 620 So.2d 1126 (Fla. 1st DCA 1993). The state has the burden of proving by the greater weight of the evidence that the probationer's actions were willful and substantial. See, e.g., Garcia v. State, 701 So.2d 607 (Fla. 2d DCA 1997).
The state failed to meet the burden of proof in the instant case that Thomas' violation was willful and substantial. The circumstances surrounding Thomas' change of residence did not show a willful violation. Thomas' move over a holiday weekend back to the original approved residence demonstrated a degree of responsibility prompted by the exigencies of the circumstances.

Sexual Battery
Thomas was also charged with violating his probation by committing a criminal offense during the term of that probation. It was alleged that he committed sexual battery upon his five year old son, C.T. during the same Thanksgiving weekend that Thomas had moved back with his mother.
The child's mother testified that when C.T. returned home, he related incidents of oral sex that occurred at Thomas' mother's home. Her testimony was weakened, however, by her admissions that her son lied on occasions including a sexual incident involving her. C.T. had also been caught in a sexual incident with a female cousin that did not involve his father. Further, it was apparent that animosity existed between Thomas and his son's mother.
*1140 An expert witness, Dr. Myers, testified that he had met with the child only once at the request of the trial judge. The meeting consisted of a joint interview with the child and his mother for 15 minutes and a 25 minute interview with the child. Dr. Myers' testimony did not indicate that the child told him about the alleged sexual incident with his father.
In contrast, the child seemed rather talkative in his videotaped interview with a police detective taken the Monday after the Thanksgiving weekend in which the alleged incident of abuse took place. During this interview, C.T. initially described oral sex, but then a few minutes later changed his story and stated, "He didn't do that." C.T. also stated that he "forget sometimes," but again he was "sure" that his dad had not engaged in the sexual act. The detective then asked C.T. if he knew the difference between a lie and a truth to which C.T. answered, "If you lie, you don't get no toys. If you tell the truth, you get some toys.... And I was telling the truth." At the end of the interview, C.T. asked for and received a toy. The detective also asked C.T. if his daddy had ever talked about doing what happened in front of him or with someone else, and C.T. answered that his dad had talked about it in front of his stepmom, but that his dad and stepmom weren't together anymore. No questions were prompted by C.T.'s answer.
Thomas, his parents, and other family members also testified. In summary, Thomas' mother's home is a 20' × 40' mobile home with no hallway. The living room area is in the center and there is a clear view of both bedrooms on either side. All of the doors and windows had been opened that Thanksgiving weekend in order to allow a flow of fresh air because Thomas' father, who spent most of his days on a couch in the living room, suffered from a respiratory condition. The relatives were all adamant that Thomas and his son were constantly surrounded by family and friends during the Thanksgiving weekend and that no opportunity existed for any sexual misconduct.
In the instant case the trial court revoked Thomas' probation for the violation of condition (5) based upon hearsay evidence the court deemed admissible under section 90.803(23), known as the child-abuse-hearsay exception. This exception provides a limited exception to the hearsay rule for reliable statements of children eleven or under that describe an act of child or sexual abuse upon, by, with or in the presence of the declarant child victim. See generally, Charles W. Ehrhardt, Florida Evidence, § 803.23 (2000 ed.). Before a statement may be admitted under section 90.803(23), the trial court must determine whether the hearsay statement is reliable and from a trustworthy source without regard to corroborating evidence. If the hearsay statement is deemed reliable, then the trial court must determine whether other corroborating evidence is present. See State v. Townsend, 635 So.2d 949, 957 (Fla.1994) ("[U]nder section 90.803(23), the trial judge must adhere to the following procedure: First, the judge must determine whether the hearsay statement is reliable and from a trustworthy source without regard to corroborating evidence. If the answer is yes, then the trial judge must determine whether other corroborating evidence is present. If the answer to either questions is no, then the hearsay statements are inadmissible.")
In the instant case the trial court only made a determination as to whether C.T.'s statements were reliable, no mention was made regarding whether other corroborating evidence was present. As to reliability, the trial court specifically found C.T. "clearly and unequivocally described an episode where he performed oral sex on his father...." The record evidence of C.T.'s hearsay statements come from the testimony of C.T.'s mother and his videotaped interview with the police detective. C.T.'s mother testified that C.T. described the alleged sexual encounter. C.T. also described the alleged sexual encounter to the detective, but a few minutes later C.T. changed his story and stated, "He didn't *1141 do that," and that he "forget sometimes," but again he was "sure" that his dad did not do anything. Because C.T.'s statements were contradictory, they should not have been deemed reliable. Another factor against reliability is the possibility of improper influence on C.T. by his mother in this domestic dispute. According to the mother's own testimony, she experienced much difficulty with every visitation her son has had with Thomas and his grandmother. She gave the example that on one occasion she had to put up with Thomas "calling HRS and telling them my child had humongous boils," and that he allegedly "called the law and told the law ... I was so drunk I could not stand up." She also had to deal with C.T.'s weekly tantrums because he did not want to go home with her, but instead preferred to stay with his grandmother. C.T.'s mother further admitted that her son has a problem with lying, giving the example that her son had lied to his grandmother about seeing her in bed with her ex-boyfriend.
Even assuming arguendo that the trial court correctly determined C.T.'s statements to be reliable, the record undisputedly reveals a lack of corroborating evidence. Accordingly, because the state failed to lay the proper foundation for the introduction of C.T.'s statements under the child-abuse-hearsay exception to the hearsay rule, the trial court was without proper basis to revoke Thomas' probation for violation of condition (5) because the revocation of probation may not be based solely upon hearsay evidence. See, e.g., Williams v. State, 666 So.2d 187 (Fla. 2d DCA 1995); Colina v. State, 629 So.2d 274 (Fla. 2d DCA 1993).
The order finding that Thomas violated his probation and the sentence imposed are vacated. We remand with instructions to restore Thomas' term of probation.
HARRIS and PLEUS, JJ., concur.