PER CURIAM.
Kelly Alberto Luces, appeals the revocation of his probation. Luces was charged by information with one count of aggravated stalking and two counts of violation of injunction against domestic violence. Following a plea of guilty, Luces was placed on three years probation, with the general condition that he “live without violating the law” and the special condition that he “not associate in any-way” with Nancy Fernandez, the victim in the case. Luces noted to the court that he and Fernandez had a child together and that the child lived with Fernandez. The trial court explained that Luces would have to work out a visitation schedule in family court and that Luces was not to have any contact with Fernandez outside the orders of the family court. Thereafter, an affidavit of revocation of probation was filed and some weeks later amended. The initial affidavit alleged that Luces had violated probation by sending a Halloween card and note to the child. The amended affidavit reiterated the violation based on the card and further alleged that Luces had been instrumental in having a third party make telephone calls to Fernandez from jail.
To revoke probation or community control, a violation must always be determined to have been willful and substantial. See State v. Meeks, 789 So.2d 982 (Fla.2001); Thomas v. State, 760 So.2d 1138 (Fla. 5th DCA 2000); McCray v. State, 754 So.2d 776 (Fla. 3d DCA 2000); Inman v. State, 684 So.2d 899 (Fla. 2d DCA 1996); Green v. State, 620 So.2d 1126 (Fla. 1st DCA 1993). We agree with the probationer that in the instant case there was insufficient evidence of a willful and substantial violation of probation.
The no contact provision of Luces’s probation order did not prohibit Luces’s written correspondence with his child. The holiday card sent to his two-year-old daughter was consistent with the hypothesis that Luces intended only to have contact with the child.[1] Also, there was no evidence that Luces orchestrated the telephone calls made to Fernandez.[2] *267 They originated from a facility from which Luces had been transferred more than a week before the calls were made. Thus, the state’s theory that Luces stood next to the caller appears logistically impossible.
Accordingly, the order revoking probation is reversed.

. Luces wrote the following note in the card at issue:
Hi You You’s. I try to get the best card that would explain the way I feel about you. This isn't even a quarter of it, there ain't enough words that would tell or express my love for you. Baby with tears in my eyes I want to tell you that I love you and I miss every moment we're not together. This is the closest I can get to you and Believe me it hurts me so much because baby I swear I wanted so much for you to have your Mom and Dad together, But I guess your Mom Don’t want that. But the Lord tells me to have faith so that I will do. I'm not gonna give it up. I hope you and your sisters have a very Happy Halloween I’m sure you will have a good time. I wish I could've been there. I’ll be thinking of you all on that Day I know it will bring tears to my eyes. But I promise Baby Daddy will be strong. Beso A Daddy mmmaahh! [sic] I LVE You! Happy Halloween Daddy.

. Fernandez testified that she spoke with a man who asked her questions and told her things only Luces knew. The man on the phone stated that he had met Fernandez at a club called Paleque, which happened to be the same club where Fernandez met Luces. Fernandez testified that she did not remember meeting this man at the club. The man told Fernandez that she had blond hair, which happened to be the hair color she had when Luces last saw her. The man on the phone proceeded to ask her about her children and family. He knew the name of both Fernandez’s sister and her best friend. Fernandez testified that the man never said who he was calling for, but would pause in the *267 middle of the conversation as if he was listening to someone else.