SHARP, W. J.,
concurring in part; dissenting in part.
I agree with the majority opinion that the record does not support the trial court’s upward departure sentence based on its finding of an escalating pattern of criminal activity. The judge stated that Ewell had committed fraudulent use of medical reports to facilitate criminal activity. This finding was completely unsupported by the evidence and could only have been premised on the judge’s disbelief of Ewell’s medical testimony.[1]
However, I respectfully disagree with the majority opinion that Ewell had the ability to pay her restitution. The record does not support that finding either and, in all fairness, Ewell’s revocation of probation for failure to pay restitution should be reversed.
In 1998, Ewell was convicted and sentenced for numerous felonies[2] in six different Central Florida counties. She was ordered to pay restitution and to perform community service, which was supervised by Citrus County.
In 2000, Ewell’s former probation officer, Linda Tew (Tew) filed a technical violation of probation with Judge Blackstone. Tew stated in her report that Ewell had paid a total of $1,471 in restitution; the majority of which was paid to other counties, not Citrus. Tew also said that Ewell’s income was $946.00 per month, which came from a part time job and her social security disability:
[ Wjhich has made the subject unable to complete more community hours and pay a larger portion of her restitution. Additionally, the subject has been diagnosed with breast cancer approximately three (3) months ago and has been going under [sic] chemotherapy. She is scheduled to go under [sic] radical mastectomy in the next week, but continues to do the best she can. In spite of her weakened condition the subject still has maintained her part time job .... (emphasis added)
Tew recommended that no action be taken against Ewell and none is reflected in this record.
In 2002, Ewell was .brought before Judge Howard on violation of probation charges that she had failed to pay the restitution ordered and had failed to perform community service. At the 2002 hearing, Ewell testified that she is under medical supervision for breast cancer and *439 a heart condition (tachycardia). She also has sugar diabetes and, as a result of a nervous breakdown in 1990, continues to take medication to stabilize her for depression. She has had a mastectomy and chemotherapy and her medical oncologist told her not to work. He instructed her to get a lot of rest, watch her diet carefully, and strictly take tamoxifen twice a day.
Ewell testified she has been receiving social security disability ($479.00 per month) since 1995 because she cannot handle stress and could not keep a job. For a while she had been driving a cab part-time. Ewell also receives alimony ($100.00 per month) and child support ($446.00 per month) for her seventeen-year-old daughter. As Judge Howard noted, Ewell’s total monthly income was $1,025.00, and her mortgage payment was $441.00 per month.
Ewell’s probation officer, Delaine Rol-lenhagen (Rollenhagen) testified that Ewell had been placed on probation on August 12, 1998. She was required to pay restitution to two Citrus County victims: Helen D’Angelo in the sum of $100.00; and the Greenwood Trust Co. in the sum of $6,607.56. Rollenhagen said that Ewell still owed D’Angelo $1.12 and Greenwood Trust $6,536.37.
Rollenhagen said Ewell had completed no community service hours because she has multiple medical problems for which Ewell had provided medical documentation. Rollenhagen testified that there was no community service Ewell could perform in Citrus County because the approved community service work place list indicated no office positions. Most employers were looking for manual labor, which Ewell is unable to perform. Rollenhagen said the approved work sites do not need anyone with the type of volunteer skills Ewell can perform. Rollenhagen concluded that she believed Ewell had tried to comply with the community service work hours, but that her medications[3] prevent her from doing so.
Rollenhagen said Ewell was good about keeping in touch with her and making all her appointments. She also made a $50.00 monthly payment each month, although that amount did not meet her monthly payment schedule. Rollenhagen testified that the total monthly payment Ewell was required to make was about $2,000 a month, because she owes restitution to other counties besides Citrus.
During the hearing, the judge asked Ewell what she had done with the proceeds of her “criminal activities.” She said she bought groceries and paid her mortgage. He elicited the information that Ewell had refinanced her home in 1999, from which she received $7,000. She explained that she put a down payment on a 1984 vehicle because she lost her previous vehicle when she could no longer make the payments. Her current vehicle’s air conditioning does not work and the windows do not go up and down. After she made a few payments, the owner gave her the car. She also paid her bail bondsmen in full from the refinancing proceeds. The judge said she had chosen the wrong bills to pay out of this money.
The judge found Ewell had the ability to pay the required amount on the Citrus County offenses. He opined that he thought she had “conned the doctors”; that she was a “career criminal” and that she used the doctors:
[ PJrobably tricking them, into essentially giving you a license to steal. There’s no other way to look at it — then coming *440 in and saying, Gee, I don’t have the ability to pay off this massive amount of theft that I perpetrated.
It’s because of those reasons, Ms. Ewell, that I find, that you have had the ability to make those payments, you have willfully chosen not to. I don’t believe that you did not have the ability to work the community service hours. You may have mentally chosen not to do them; you may have conned the probation people into thinking that, but you didn’t con this court.
It’s because of that I’m going to revoke your probation ... (emphasis added).
The state must establish that a violation of probation or community control is substantial and willful before a court may revoke the defendant’s probation. See Palma v. State, 830 So.2d 201, 202 (Fla. 5th DCA 2002)(community control); King v. State, 817 So.2d 935, 937 (Fla. 5th DCA 2002); Nichols v. State, 747 So.2d 1015 (Fla. 1st DCA 1999). Whether a violation is willful and substantial is a question of fact that will not be overturned on appeal unless the record shows no evidence to support it. See Brown v. State, 776 So.2d 329, 330 (Fla. 5th DCA 2001); Thomas v. State, 760 So.2d 1138, 1139 (Fla. 5th DCA 2000); Manon v. State, 740 So.2d 1253, 1256 (Fla. 3d DCA 1999).
Where the failure to pay is beyond the defendant’s ability, the failure cannot justify revocation of probation. See Lynom v. State, 816 So.2d 1218 (Fla. 2d DCA 2002)(no willful and substantial violation where defendant cannot afford to pay for sex offender treatment); Hartzog v. State, 816 So.2d 774 (Fla. 2d DCA 2002)(no willful and substantial violation; state failed to show defendant had ability to pay restitution); Robinson v. State, 773 So.2d 566 (Fla. 2d DCA 2000)(no willful and substantial violation where balance remained but defendant made payments and nothing indicated he could pay greater amount).
In this case, the trial court’s findings that Ewell had the ability to pay restitution and perform community service, were based on the same rationale he used to find that Ewell committed fraudulent use of medical records — his disbelief of her testimony, and by necessity, that of Rol-lenhagen. In fact, there was no evidence that Ewell could make the restitution payments of $2,000 per month on her $1,025 monthly income, because her total income was $975.00 per month less than her restitution obligations. Further, based on Rollenhagen’s testimony, which was not countered in the record, there was no community service work available because nothing was approved for persons not able to perform manual labor in Citrus County; and based on the testimony in this record, also not opposed, Ewell’s medical problems mandated she not perform manual labor.
I also submit that Ewell’s failure to use the $7,000 (which equates to only three and one-half months of the ordered restitution) she obtained from her refinancing towards restitution is insufficient to support a willful probation violation under the facts here. See White v. State, 736 So.2d 1226 (Fla. 3d DCA 1999).[4] She used this money to pay necessary expenses: the bail bondsmen bill was a valid and outstanding obligation, and a vehicle was necessary to *441 enable Ewell to get to her medical and probation appointments, and to meet other essential living requirements. Further, her short-time possession of the $7,000 occurred in 1999, a year before Ewell appeared before Judge Blackstone on a “technical” violation of probation for failure to pay restitution, after which she was not violated. These old facts should not provide fresh fodder for a new violation charge based on failure to pay restitution.
For the above reasons, I conclude the trial court erred in revoking Ewell’s probation.

. The judge stated:
For the record, I make a further finding as to the escalating pattern of criminality; I find there are fraudulent use of medical reports to facilitate criminal conduct.
When defense counsel asked the basis of the finding, the judge responded:
By her own testimony. I choose not to believe it. Looking at all of the medical evidence I have seen, it appears that this was a professional con woman who essentially conned her doctors into this stuff and then used that as a license to steal. And that is, in fact, my judicial finding.

. Ewell had no juvenile convictions but between September of 1997 and July of 1998, in Hillsborough, Orange, Citrus, Pinellas, Pasco, and Charlotte Counties, Ewell committed the following offenses, most of which involved several counts of the same offense: grand theft; fraudulent use of a credit card; petit theft; dealing in stolen property; and uttering a forged instrument. Ewell has not committed any further offenses since that time.

. Ewell testified she was taking tamoxifen for cancer; glucovite for her heart; medrol for her pulse rate; zyprexa, wellbutrin, klonopin, zoloft and another medication to stabilize her for her depression.

. In White v. State, 736 So.2d 1226 (Fla. 3d DCA 1999), White had only paid $4,000 of her $43,868 restitution obligation by the end of her probationary period. The evidence showed that White had set aside $1,400 in a savings account to pay her estimated tax income obligation and she was not up-to-date on her payments, but White’s probation officers had told her to pay what she could. The court held that White did not willfully violate her probation and reversed.