959 So.2d 817 (2007)
Karry KADUK, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3776.
District Court of Appeal of Florida, Fourth District.
July 5, 2007.
*818 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
The appellant, Karry Kaduk, challenges the trial court's order of revocation of probation. He contends the violation of changing residences without approval of his probation officer was not a willful and substantial violation, where he removed himself from his residence because of a domestic dispute. We conclude that the trial court did not abuse its discretion in determining that failure to notify his probation officer for a period of weeks after the incident makes this violation willful and substantial. In addition, Kaduk contends that the trial court erred in failing to familiarize itself with prior probation revocation proceedings before sentencing him on his current violation. Because Florida Rule of Criminal Procedure 3.700(c) does not apply in probation violation proceedings, the trial court's consideration of previous admitted violations in determining whether to revoke his probation was not an abuse of discretion. We affirm.
Kaduk pled to and was sentenced for multiple counts of burglary of a dwelling, grand theft, and dealing in stolen property. After he served the prison portion of his sentences, he was placed on probation. Over the years his probation supervisors filed five affidavits for violation of probation. Three times Kaduk admitted the *819 violations, and Judge Shapiro readmitted him to probation and modified its terms. A fourth time, Judge Shapiro found no willful violation.
On the fifth affidavit of violation of probation, Kaduk was charged with changing his residence without permission, failing to file a monthly report, and failing to comply with the probation officer's instructions. Judge Holmes presided over this proceeding. At the hearing, the probation officer testified that she had received a call from Kaduk's fiancée on April 16, 2005, telling her that Kaduk had moved out of their residence because they had been fighting. The fiancée believed that Kaduk was at his mother's home, but the officer did not go to the mother's house. Instead, she called Kaduk's cell phone but received no response.
Kaduk did not call his probation officer until April 18th or 19th. He apologized for missing his appointment on April 5th, his normal reporting date, explaining that he had been busy at work. He also informed her that he had moved out of his residence because of a domestic dispute on the night of April 3rd. The officer testified that she told Kaduk to report the next day, but he did not come to the office until April 26th. By that time the officer had filed an affidavit of violation.
Judge Holmes found that Kaduk's violations of probation in changing his residence without permission, failing to report on April 5th, and failing to comply with his probation officer's order to report to the office on April 19th were willful and substantial violations, particularly given the time Kaduk had been on probation and his understanding of its rules. The court revoked his probation and sentenced him to prison for ten years, less all jail and prison credit to which he was entitled. Kaduk appeals.
During the appeal process, Kaduk filed a Rule 3.800(b)(2) motion to correct sentence, alleging the trial court had erred in referencing prior probation violations when determining whether to revoke his probation. In responding to this allegation, the trial court said:
This Court was merely responding to defense counsel's request that the Court reinstate probation or "give him another shot" (p. 46).[1] This Court did not need to look at other violations nor the transcripts to see that Defendant was not a likely candidate for continued supervision. This Court is certainly free to take into account Defendant's prior history of supervision in determining whether to reinstate or revoke probation.
The trial court denied the motion.
An appellate court reviews a trial court decision on violations of probation under an abuse of discretion standard. Myers v. State, 931 So.2d 1069, 1071 (Fla. 4th DCA 2006); Matthews v. State, 736 So.2d 72, 75 (Fla. 4th DCA 1999). "The determination of whether a violation of probation is willful and substantial is a question of fact and will not be overturned on appeal unless the record shows that there is no evidence to support it." Riggins v. State, 830 So.2d 920, 921 (Fla. 4th DCA 2002). "For a violation of a condition of probation to trigger a revocation, the violation must be willful and substantial, and the state must prove it by the greater weight of the evidence." Myers, 931 So.2d at 1071 (quoting Tobias v. State, 828 So.2d 1066, 1068 (Fla. 4th DCA 2002)). A trial court has broad discretion in determining *820 whether a violation of probation is willful and substantial. See State v. Carter, 835 So.2d 259, 262 (Fla.2002).
Kaduk argues that leaving his residence because of a domestic quarrel does not constitute a willful and substantial violation of the terms of his probation. On the facts of this case, the trial court disagreed, and competent substantial evidence supports that conclusion. Kaduk's failure to report his absence from his residence for a period of over two weeks is not an insignificant violation of his probation conditions.
Kaduk relies on Thomas v. State, 760 So.2d 1138 (Fla. 5th DCA 2000), where the defendant left his approved residence and moved back into his mother's home, which had previously been his approved residence, after having a domestic quarrel with his girlfriend over Thanksgiving weekend. When the parole officer located the defendant the Monday following Thanksgiving, Thomas explained to the officer that he attempted to call him at his office but was unsuccessful because of the long holiday weekend. The trial court found that Thomas violated the condition that he obtain approval before changing his residence. On appeal, the Fifth District held that the circumstances did not show a willful violation, explaining that "Thomas' move over a holiday weekend back to the original approved residence demonstrated a degree of responsibility prompted by the exigencies of the circumstances." Id. at 1139.
In contrast to Thomas, Kaduk moved on April 3rd but did not speak with his probation officer until April 18th or 19thmore than two weeks after the move. Other than Kaduk's own testimony, there was no evidence that he attempted to contact his probation officer before then. While Kaduk claimed that he left his probation officer a message, when he received no response then, as the trial court commented, he should have called her again. Moreover, unlike in Thomas, there was no evidence that the mother's house was a prior approved residence.
The trial court is in the best position to evaluate the credibility of witnesses and an appellate court must give great deference to the findings of the trial court. Riggins, 830 So.2d at 921. The record contains substantial competent evidence to support the conclusion reached by the trial court that Kaduk willfully and substantially violated his probation by changing his address without prior permission, failing to report on April 5th, and failing to follow his probation officer's instructions.
Kaduk also contends that Judge Holmes failed to comply with rule 3.700(c)(1) when she surmised what occurred during prior proceedings without reviewing the record of Kaduk's prior probation violation hearings. Florida Rule of Criminal Procedure 3.700(c)(1) requires that a judge who did not take the plea or preside at the trial of a defendant must familiarize himself or herself with prior proceedings before making sentencing decisions. However, while rule 3.700(c) applies to initial sentencing hearings, it does not extend to violation of probation proceedings. See, e.g., Murphy v. State, 939 So.2d 1168 (Fla. 4th DCA 2006); Lambert v. State, 910 So.2d 890 (Fla. 1st DCA 2005). Thus, the judge who tries the violation of probation case is not a successor judge within the contemplation of the rule.
Furthermore, Judge Holmes was not relying on prior violations to determine whether Kaduk violated probation for the acts charged in the affidavit. Instead, the judge looked at the prior record of violations to determine whether Kaduk's probation should be revoked as a result of the new violations. Upon a finding of a willful and substantial violation of probation, section *821 948.06, Florida Statutes, gives the judge discretion to revoke, modify, or continue the probation, or to place the probationer into community control. Just as a trial judge considers a past criminal record in determining the appropriate sentence, so too a trial judge may consider a probationer's past probation record in determining whether to revoke for the violation or impose some lesser sanction. We agree with Judge Holmes that Kaduk's prior violations and the sanctions imposed can and should be considered in determining whether to revoke his probation on this fifth affidavit of violation. Certainly, the fact that Kaduk admitted violating probation three separate times in the past, for which the judge continued him on probation, would factor into a decision by the trial court on whether he should be allowed to continue on probation for his fourth violation.
Probation is a matter of grace. See Matthews v. State, 736 So.2d 72, 75 (Fla. 4th DCA 1999). As Judge Sharp noted in State v. Watson, 909 So.2d 942 (Fla. 5th DCA 2005):
Whether to modify or continue probation after a violation is a matter our statutes and rules leave up to the discretion of the judge who conducts the violation proceeding. If revoked, appellate courts give the judge's ruling great deference, under the long-standing mantra that probation is a matter of "grace."
Id. at 945 (footnote omitted). The court exercised its "grace" three prior times in continuing probation. This time, that "grace" ran out. We defer to the judge's ruling.
Affirmed.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] As Kaduk points out in his brief, counsel actually stated, "give him a shot" (emphasis added).