974 So.2d 594 (2008)
William Paul THOMPSON, a/k/a William Paul Thomson, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-3978.
District Court of Appeal of Florida, Second District.
February 22, 2008.
*595 James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
William Paul Thompson appeals the order that revoked his probation and his resulting sentences. Because the State failed to prove by competent, substantial evidence that Mr. Thompson had either willfully failed to pay court-ordered costs or that he had changed his approved residence without permission, we reverse.

I. FACTS AND PROCEDURAL HISTORY
A. Background
In October 2004, Mr. Thompson pleaded no contest to the charges of aggravated battery, section 784.045, Florida Statutes (2003), a second-degree felony; and felony child abuse, section 827.03, Florida Statutes (2003), a third-degree felony. The circuit court adjudged Mr. Thompson to be guilty of these crimes and sentenced him to two years' probation on each charge. The two-year probationary terms were designated to run concurrently. In pertinent part, condition twelve of Mr. Thompson's conditions of probation required him to pay $1074 in court costs.
After Mr. Thompson's initial sentence was imposed, he relocated to Philadelphia, Pennsylvania. The supervision of Mr. Thompson's probation was transferred to Pennsylvania in accordance with the Interstate *596 Compact for Adult Offender Supervision, sections 949.07-.08, Florida Statutes (2004). Thus Pennsylvania, as the receiving state, became responsible for supervising Mr. Thompson during his two-year probationary term. See § 949.07(2); Fla. Admin. Code R. 23-4.001 (repealed 2006); Kolovrat v. State, 574 So.2d 294, 296 (Fla. 5th DCA 1991). The Pennsylvania authorities subsequently reported that Mr. Thompson had absconded from supervision, and a warrant was issued for his arrest.
After Mr. Thompson's return to, Florida, the State filed an amended affidavit for violation of probation charging Mr. Thompson with violating conditions three, twelve, and five of his probation. The alleged violation of condition twelve was for Mr. Thompson's failure to pay the $1074 in court-ordered costs. Condition three of the standard conditions provided: "You will not change your residence or employment or leave the county of your residence without first procuring the consent of your supervising officer." Condition five related to new violations of the law. However, the State subsequently dropped its claim of a new law violation.
B. The Evidence Presented at the Revocation Hearing
At the revocation hearing held in July 2006, the State presented the testimony of Mr. Thompson's probation supervisor in Philadelphia. She testified that Mr. Thompson had an initial visit with her on November 19, 2004. At that time, the probation supervisor instructed Mr. Thompson on the terms and conditions of his probation, including the requirement that he make weekly reports and that he was required to obtain her permission before changing his residence. During this initial visit, Mr. Thompson informed his probation supervisor of the address in Philadelphia where he said that he was residing.
After Mr. Thompson's initial visit with his probation supervisor, he did not report to her and she did not see him again until April 27, 2005, when she visited the address that he had designated as his Philadelphia residence. The probation supervisor testified that her purpose in going to the address was "to make sure [Mr. Thompson] still lived there." At the designated address, the probation supervisor found a house that was under renovation. Mr. Thompson, who was present during the probation supervisor's visit, told her that his uncle was letting him stay at the house while it was being repaired. The probation supervisor testified that the house had a single bedroom on the second floor that "looked okay, but the rest of the house was justwas not livable." With the exception of the second-floor bedroom, the floor of the house was cluttered with debris. The walls lacked sheetrock, and the electrical wiring was exposed. Another major impediment to living at the house was the absence of running water. When questioned about this deficiency, Mr. Thompson explained to his probation supervisor that he used the bathroom at a friend's residence around the corner.
Before leaving, the probation supervisor instructed Mr. Thompson again about his weekly reporting requirement. In fact, she also had him sign a form acknowledging that he had been instructed to report to his probation supervisor weekly and that a "[f]ailure to do so [would] be a violation of [his probation]." The probation supervisor might have entertained doubts that Mr. Thompson had been living without running water in a house that was undergoing a major renovation through a Philadelphia winter. Nevertheless, she testified that upon returning to her office *597 from the April 2005 home visit, she had "verified that [Mr. Thompson] was there."
The April 2005 home visit was the last time that the probation supervisor had any contact with Mr. Thompson. When he failed to report after the April 2005 home visit, the probation supervisor visited the house again. On this occasion, she testified, no one answered the door, and there was no indication that anyone was living there. Afterward, the probation supervisor made one more effort to contact Mr. Thompson by leaving a message for him on his mother's telephone answering machine. Mr. Thompson did not return the call. The probation supervisor also testified that she drove by the house frequently, but she had never seen anyone entering or leaving it. In the absence of any further contacts by Mr. Thompson, the probation supervisor filed a violation report and closed the case.
At the July 2006 revocation hearing, Mr. Thompson testified that he had lived at the address he had given to his probation supervisor since the transfer of his probation to Philadelphia. He said that he was leasing a room in the house at a reduced rental amount in exchange for his assistance with the ongoing renovation project. According to Mr. Thompson, while the house lacked running water, it did have electricity. With regard to the lack of running water, Mr. Thompson repeated his explanation that he had a key to a friend's house nearby where he could use the bathroom. Mr. Thompson claimed that he may have been working on the day that the probation supervisor knocked on the door and no one answered. He said that the probation supervisor did not leave a notice on the door notifying him of the attempted visit.
It was undisputed that Mr. Thompson had never notified his probation supervisor of any change of residence. Mr. Thompson conceded that he had not yet paid the $1074 in court-ordered costs.
C. The Circuit Court's Ruling and the Sentences Imposed
Based on the evidence presented at the hearing, the circuit court found that Mr. Thompson had violated conditions twelve and three and revoked his probation.' In its oral pronouncement of sentence, the circuit court sentenced Mr. Thompson to ten years' imprisonment for the aggravated battery, a second-degree felony, and five years' imprisonment for felony child abuse, a third-degree felony. The sentences were designated to run concurrently. The circuit court's oral pronouncement of sentence provided further:
Eight years of this sentence will be suspended upon your completion of a successful term of probation.
Therefore, the judgment is that you serve two years at this time, credit for time served, and the balance of eight years you'll be on probation.
The written sentences differed slightly from the ones that were orally pronounced. The written sentences provided that Mr. Thompson would serve a term of two years' imprisonment followed by eight years' probation on both charges. Once again, the sentences were designated to run concurrently.

II. PRELIMINARY CONSIDERATIONS
In order for the circuit court to revoke Mr. Thompson's probation, the State was obligated to prove by the greater weight of the evidence that he had willfully and substantially violated a specific condition of his probation. See Conhagen v. State, 942 So.2d 444, 445 (Fla. 2d DCA 2006) (citing Hicks v. State, 890 So.2d 459 (Fla. 2d DCA 2004)). Thus the circuit court was required to consider *598 whether the charged violations were willful and substantial and whether they were supported by the greater weight of the evidence. See State v. Carter, 835 So.2d 259, 261 (Fla.2002). Our review of the circuit court's determination is for abuse of discretion. See id. at 262; Robinson v. State, 907 So.2d 1284, 1286 (Fla. 2d DCA 2005).

III. DISCUSSION
A. Condition TwelveThe Failure to Pay Court Costs
The circuit court found that Mr. Thompson had violated condition twelve of his probation by failing to pay $1074 in court costs. On appeal, Mr. Thompson argues that the circuit court abused its discretion by finding him in violation of condition twelve because the State failed to prove that he had the ability to pay the court costs. "[W]here the violation alleged is a failure to pay costs or restitution, there must be evidence and a finding that the probationer had the ability to pay." Shepard v. State, 939 So.2d 311, 314 (Fla. 4th, DCA 2006) (citing Warren v. State, 924 So.2d 979, 980-81 (Fla. 2d DCA 2006)). With commendable candor, the State concedes that there was no evidence presented at the hearing concerning Mr. Thompson's ability to pay the court costs and that the circuit court failed to make the required finding. Consequently, the circuit court abused its discretion in finding that Mr. Thompson had violated condition twelve.
B. Condition ThreeChanging Residence without Permission
Mr. Thompson also argues that the evidence presented at the hearing was insufficient to support a finding that he had violated his probation by changing his residence without first obtaining his probation supervisor's consent. In response, the State relies on the purported improbability of Mr. Thompson's housing arrangements. As the State puts it: "Where [Mr. Thompson] actually lived is anybody's guess, but it defies logic to believe he could live at [the house in question] continuously where there was no running water."
In considering the State's argument based on the unsuitable living conditions at Mr. Thompson's designated address, we note initially that condition three did not require that Mr. Thompson live in any particular kind of residence. While we agree that Mr. Thompson's living arrangements were less than ideal, a court may not, revoke probation based on conduct that does not constitute a violation of the probationer's conditions of probation. See Meade v. State, 799 So.2d 430, 433 (Fla. 1st DCA 2001). More important, on April 27, 2005, the probation supervisor met Mr. Thompson at the house that he had designated as his residence. Thus she was able to see for herself the conditions under which he was living. If the probation supervisor did not believe that Mr. Thompson was actually living at the house, she could have determined that his claimed living arrangement was a sham and immediately violated his probation. She did not. Instead, upon returning to her office from the home visit, the probation supervisor "verified that [Mr. Thompson] was there." Thus the State's argument that Mr. Thompson's claimed residential arrangement "defies logic" to such an extent that the circuit court could infer that he was not actually living there is unpersuasive.
The State's alternative argument that the probation supervisor's subsequent visit to Mr. Thompson's address was sufficient to support a finding that he had violated condition three is equally unconvincing. Two weeks after the April 27 visit to the *599 residence, the probation supervisor returned to the residence and found no one there. She testified further that there was no indication that anyone was living there. However, the probation supervisor did not testify that she had checked with neighbors or done anything else to verify that Mr. Thompson had moved. Instead, she left a message for Mr. Thompson on his mother's telephone answering machine. We note that Mr. Thompson did not have a curfew and that he was not on community control. Evidence that Mr. Thompson was not at home during a single visit and that he failed to return a telephone message left on a relative's telephone answering machine was not sufficient to prove that he had changed his residence. See Singleton v. State, 891 So.2d 1226, 1227-28 (Fla. 2d DCA 2005), disapproved of on other grounds by Lawson v. State, 969 So.2d 222 (Fla.2007); see also Gauthier v. State, 949. So.2d 326, 327 (Fla. 5th DCA 2007) (holding that evidence showing that a probationer was absent from his residence for thirteen nights was insufficient to support a finding that the probationer had changed his residence without permission because the probationer did not have a curfew). Furthermore, the State did not present any evidence that Mr. Thompson was actually living at a different address. For these reasons, the circuit court erred in finding that Mr. Thompson had violated condition three.
C. The Failure to Report
In support of the order of revocation, the State also argues that Mr. Thompson was "an absconder." The record contains competent, substantial evidence that would have supported a finding that Mr. Thompson failed to report to his probation supervisor as required by the conditions of his probation. Granted, a probationer's repeated failure to make required reports will support the revocation of probation. See Oates v. State, 872 So.2d 351, 354 (Fla. 2d DCA 2004); Robinson v. State, 773 So.2d 566, 567-68 (Fla. 2d DCA 2000). Nevertheless, as the circuit court noted, the State omitted to charge Mr. Thompson with failure to report. A revocation of probation based on a violation not alleged in the charging document is a deprivation of the right to due process of law. See Davis v. State, 891 So.2d 1186, 1187 (Fla. 4th DCA 2005); Perkins v. State, 842 So.2d 275, 277 (Fla. 1st DCA 2003). As the circuit court recognized, it could not revoke Mr. Thompson's probation based on a failure to report because this conduct was not charged in the amended affidavit for violation of probation. See Grimsley v. State, 830 So.2d 118, 120 (Fla. 2d DCA 2002); Perkins, 842 So.2d at 277. It follows that the State may not rely on evidence of Mr. Thompson's failure to report to sustain the revocation order.
D. Sentencing Errors
We agree that some of Mr. Thompson's arguments concerning errors in his sentences appear to have merit. However, based on our disposition of this case, we need not address these issues.

IV. CONCLUSION
The record in this case does not establish that Mr. Thompson violated the terms and conditions of his probation as charged in the amended affidavit for violation of probation. For this reason, we reverse the order of revocation of probation and the sentences that were imposed as a result of the revocation order. The sentences imposed by the circuit court required Mr. Thompson to serve two years in prison. At this time, it appears that Mr. Thompson has been released from prison, and he is now serving his two concurrent eight-year probationary terms. Mr. Thompson was originally placed on *600 probation for two concurrent two-year probationary terms on October 11, 2004. These two-year probationary terms would have expired on October 10, 2006. For this reason, we do not direct that Mr. Thompson be restored to supervision under the terms and conditions of his original probationary sentence. Instead, on remand, the circuit court shall discharge Mr. Thompson from supervision. See Davis v. State, 867 So.2d 608, 612 (Fla. 2d DCA 2004).
Reversed and remanded with instructions.
WHATLEY, J., and GALLEN, THOMAS M., Associate Senior Judge, Concur.