NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


MARIA BRAVO, DOC #H48590,   )
  )
      Appellant,   )
  )
v.   )    Case No. 2D17-1873
  )
STATE OF FLORIDA,   )
  )
      Appellee.   )
_____ )

Opinion filed December 12, 2018.

Appeal from the Circuit Court for Polk
County; Kelly P. Butz, Judge.

Howard L. Dimmig, II, Public Defender,
and Richard P. Albertine, Jr., Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kiersten E. Jensen,
Assistant Attorney General, Tampa, for
Appellee.


ROTHSTEIN-YOUAKIM, Judge.

      Maria Bravo appeals from an order revoking her community control and

the resulting sentence.  Because the State failed to prove that she willfully and

substantially violated condition 16 of her community control, we reverse.

Condition 16 required Bravo to remain confined to her approved residence except, among other circumstances not pertinent here, as approved by her community control officer (CCO). In the affidavit of violation of community control, Bravo's CCO alleged that on December 9, 2016, Bravo, without the CCO's permission, had failed to remain confined to her approved residence. Following an evidentiary hearing, the trial court found that she had willfully and substantially violated condition 16, revoked her community control, and sentenced her to three years in prison.

The testimony at the evidentiary hearing established the following:

The CCO first met Bravo on December 6, 2016, at Bravo's boyfriend's house. Bravo's boyfriend did not actually want Bravo to stay there, but Bravo had no other resources, had no significant family ties in Florida, and, for the time being, was unable to support herself because she was unemployed. Consequently, despite the CCO's concerns that the arrangement would not last, the boyfriend's house became Bravo's approved residence for community control purposes.

At 4:59 p.m. on December 9, 2016—three days later[1]—the CCO went to the boyfriend's house, and Bravo was not there. The boyfriend's mother told the CCO that Bravo and the boyfriend had had an argument and that Bravo had left. The CCO immediately called Bravo, who answered and told the CCO that she was on her way to her daughter's grandmother's home.[2] Bravo also told the CCO that she had tried calling the CCO's office, which closes for the day at 5:00 p.m., but had been unable to reach anyone.

---

[1]And, we note, a Friday.

[2]We presume, based on context, that this refers to the child's paternal grandmother.

At the hearing, Bravo testified that "things just got bad at home and I felt like me leaving would have been best for me." When asked to elaborate, she stated: "There was somebody else at the house and I didn't want—I didn't want anything to happen. I didn't want to get in trouble again so I left." When asked if she had meant to violate her community control, Bravo replied: "I didn't. I just thought by me staying it would make the situation worse." These statements suggest that her decision to leave had been neither premeditated nor particularly voluntary. When asked if she had tried to contact her CCO before leaving, she responded that she had "tried to get ahold of anyone in the [probation] office," but she could not remember what time she had called.

The CCO testified that if Bravo had called the office before 5:00 p.m., a duty officer would have been available to authorize her to leave her boyfriend's house. There was also some confusing testimony from both Bravo and the CCO that, taken as a whole, established that although Bravo had also been given an alternate number to call, she had only tried to call the office.

The trial court found as follows:

> [A]s far as whether there was a better option I believe there was. And Ms. Bravo's testimony is that she was leaving for a better option - - that she was leaving to go to the grandmother of her child['s] residence. The problem becomes she did not get permission to leave [her boyfriend's house].
>
> The record has been clear that she was at least given two numbers by her own . . . testimony she was given a number specifically for the [CCO] which from the testimony seems to have been the cell phone number of the [CCO] as well as the office number for the probation office. So she had at least two numbers by her own testimony. And she did not get permission that's what this comes down to so I do find it's a willful, substantial and material violation which has been proven by a preponderance of the evidence . . . .

Thus, the trial court found that Bravo had willfully and substantially violated condition 16 because despite having at least two contact numbers in her possession, she had tried to call only one of them and had failed to obtain her CCO's approval before leaving her approved residence.

We review for an abuse of discretion the trial court's decision to revoke Bravo's community control. Filmore v. State, 133 So. 3d 1188, 1193 (Fla. 2d DCA 2014) (citing Savage v. State, 120 So. 3d 619, 623 (Fla. 2d DCA 2013)). First, we must determine whether competent substantial evidence supports the trial court's finding of a willful and substantial violation of a condition of community control. Id. (citing Savage, 120 So. 3d at 621). The State must prove such a violation by the greater weight of the evidence. See id. (citing Anthony v. State, 854 So. 2d 744, 747 (Fla. 2d DCA 2003)).

The State failed to carry its burden. At most, the evidence established that despite having two telephone numbers, Bravo had tried to call only one of them. The trial court did not find Bravo not credible, and there was no evidence refuting either her assertion that she had tried to reach "anyone" at the probation office or her claim of a circumstance compelling her to leave in haste.[3] "A defendant's failure to comply with a probation condition is not willful where [her] conduct shows a reasonable, good faith attempt to comply[,] and factors beyond [her] control, rather than a deliberate act of misconduct, caused [her] noncompliance." Selig v. State, 112 So. 3d 746, 749 (Fla. 2d DCA 2013) (quoting Soto v. State, 727 So. 2d 1044, 1046 (Fla. 2d DCA 1999)); see also Williams v. State, 896 So. 2d 805, 806 (Fla. 4th DCA 2005) (holding that although

---

[3]At the hearing, the CCO implied a possibility of domestic violence between Bravo and her boyfriend.

- 4 -

the defendant had moved without notifying his probation officer, the failure to notify was not a willful violation of his probation because he had been involuntarily evicted from his residence and was living on the street); Thomas v. State, 760 So. 2d 1138, 1139 (Fla. 5th DCA 2000) (holding that the defendant's decision to move out of his girlfriend's residence and back to his original approved residence after a domestic quarrel with his girlfriend over Thanksgiving weekend, during which he had tried unsuccessfully to contact his parole officer, was not a willful or substantial violation of his probation).

Moreover, the evidence does not establish that Bravo's failure to call the alternate number was anything more than negligence attributable to the circumstances in which she left, and "[a] violation of probation will not be found where the violation is due to negligence or ineptitude." Garcia v. State, 701 So. 2d 607, 609 (Fla. 2d DCA 1997). When the CCO called Bravo, Bravo immediately answered the phone and explained her situation. She plainly was not absconding; nor was she avoiding contact with her CCO.[4]

Because competent substantial evidence did not support the trial court's finding that Bravo had willfully and substantially failed to remain confined in her approved residence without her CCO's approval, the court abused its discretion in revoking Bravo's community control. Accordingly, we reverse the order revoking Bravo's community control and remand for the trial court to vacate the sentence and reinstate Bravo's community control.

---

[4]The CCO reached Bravo just after 5:00 p.m. and just minutes after Bravo had left her boyfriend's house. The CCO could have considered that phone call as Bravo's request to move and could have granted it on the spot—exactly what she testified that she would have done if Bravo had called her before 5:00 p.m.

Reversed and remanded with directions.


KHOUZAM and MORRIS, JJ., Concur.