NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

COREY LAMONT BROWN, JR.,    )
    )
    Appellant,    )
    )
v.    )    Case No. 2D18-1892
    )
STATE OF FLORIDA,    )
    )
    Appellee.    )
_____)

Opinion filed October 4, 2019.

Appeal from the Circuit Court for
Hillsborough County; Nick Nazaretian,
Judge.

Howard L. Dimmig, II, Public Defender, and
Rachel Roebuck and Maureen Surber,
Assistant Public Defenders, Bartow, for
Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Chelsea Simms, Assistant
Attorney General, Tampa, for Appellee.

VILLANTI, Judge.

Corey Lamont Brown, Jr., appeals the order revoking his community

control and sentencing him to five years in prison. In his sole issue on appeal, Brown

contends that the trial court abused its discretion by revoking his community control

when the State's evidence, which consisted solely of testimony that Brown failed to answer his door when his community control officer visited at 6:50 a.m., was legally insufficient to prove a willful and substantial violation of community control. Based on this court's decision in Brown v. State, 813 So. 2d 202 (Fla. 2d DCA 2002),[1] we reverse and remand for reinstatement of Brown to community control.

The State originally charged Brown with violating his community control by committing a new law violation, changing his residence without permission, and failing to remain confined to his approved residence except as approved by his community control officer; however, at the revocation hearing it proceeded only on the charge of failing to remain confined to his approved residence. At the hearing, Brown's community control officer, Krystal Shaw, testified that she went to Brown's approved residence on September 27, 2017, at 6:50 a.m., a time when Brown was supposed to be home. When she arrived, she called Brown's cell phone, but he did not answer. She knocked on his apartment door "several times very hard," but no one answered. She then left her card wedged into the door jamb of Brown's door with a note for him to call her immediately, but she never received a call from Brown.

In response, Brown testified that he was home at the time but that he was asleep. He testified that he did not hear his cell phone ring, did not hear anyone knock on the door, and did not find Shaw's card in his door when he left for work later that morning. He testified that his bedroom is at the back of his apartment, about seventy-five feet from the front door. He testified that he had to be at work that day at 8:30 a.m.

---

[1]The probationer involved in the 2002 Brown case is not related to the defendant in this case.

and that he would normally get up between 7:30 and 7:45 a.m. to prepare for work. Other than his own testimony, Brown offered no evidence in support of his contention that he was home. After considering this testimony, the trial court rejected Brown's explanation for his failure to answer the door and found that he had willfully and substantially violated the terms of his community control. Brown now appeals the revocation.

When the State charges a violation of community control, it must prove the violation by the greater weight of the evidence. See Bravo v. State, 268 So. 3d 193, 196 (Fla. 2d DCA 2018) (citing Filmore v. State, 133 So. 3d 1188, 1193 (Fla. 2d DCA 2014)). In reviewing a trial court's decision to revoke community control, this court "must determine whether competent substantial evidence supports the trial court's finding of a willful and substantial violation of a condition of community control." Id. at 195. Evidence that gives rise to multiple reasonable inferences, only one of which establishes a violation, does not meet this standard. Cf. Thompson v. State, 974 So. 2d 594, 598 (Fla. 2d DCA 2008) (holding that evidence that probationer's listed residence was undergoing reconstruction and had no running water was insufficient to support the single inference that the defendant was not living there so as to support a finding of a willful and substantial violation for failure to report a change in residence).

Here, as he did in the trial court, Brown contends that the State did not present competent, substantial evidence to prove that he was not home when Shaw arrived and that therefore the evidence was legally insufficient to support the conclusion that he willfully and substantially violated his community control. He relies on this court's decision in Brown, in which, on virtually indistinguishable facts, this court

reversed the revocation of community control when the State's only evidence to support that revocation was the testimony of the community control officer that no one answered the door in response to her knocks. In so doing, we held that the State's evidence was legally insufficient to support a finding of a willful and substantial violation because "[e]stablishing that no one answered the door at [2:00 a.m. in] the morning" did not prove that Ms. Brown was not home. 813 So. 2d at 203-04. Brown contends that the facts here compel the same result.

In contrast, the State argues that this court should affirm the revocation on the basis of the First District's decision in Hurst v. State, 941 So. 2d 1252 (Fla. 1st DCA 2006). In that case, the State sought revocation of Hurst's sex offender probation based on his failure to comply with his curfew. Id. at 1253. Hurst's probation officer testified that she went to Hurst's trailer at 11:48 p.m. to ensure that he was there. Id. She testified that she pounded on the door, as well as on the wall of the trailer by the bedroom where she knew Hurst slept. Id. She testified that she knocked so loudly that she woke Hurst's neighbors in the adjoining trailer. Id. Nevertheless, Hurst did not answer the door. In response, Hurst testified that he was home, that he had the flu, and that he had taken a double dose of cold medicine. Id. The trial court rejected Hurst's testimony as not credible and revoked his probation.

In affirming the revocation, the First District concluded that the trial court had made a credibility determination between the two witnesses and that it had no authority to revisit that credibility determination. Id. (citing Porter v. State, 788 So. 2d 917, 923 (Fla. 2001), and Vanstraten v. State, 901 So. 2d 391, 393 (Fla. 1st DCA 2005)). However, the dissent pointed out that the legal issue presented by the case did

- 4 -

not truly turn on a credibility determination. Id. at 1254 (Ervin, J., dissenting). Rather, it turned on whether one possible inference from the State's evidence—that no answer to the knock meant that Hurst was not home—was sufficient to prove that Hurst was not home and so had willfully and substantially violated his probation. Id. at 1255. The dissent would have followed this court's decision in Brown and would have held that this inference was legally insufficient to support a finding of a willful and substantial violation. Id.

Here, this court is presented with the same issue addressed in Brown and Hurst, i.e., whether the State's evidence that no one answered the door in response to a knock is legally sufficient to prove that Brown was not home. It is not. Even if the trial court rejected Brown's testimony that he was asleep, the record contains no direct evidence that Brown was not home. Instead, the only direct evidence was that no one answered Brown's door when Shaw knocked. From this evidence, the court could certainly infer that Brown was not home. But it could just have reasonably inferred that Brown was asleep, in the shower, or otherwise occupied. The State did not present any evidence to show how long Shaw stayed outside Brown's door or how long she continued to knock. And unlike the knocking in Hurst, there is no indication that Shaw's knocking was sufficiently loud to awaken Brown's neighbors. Thus, the inference that Brown was absent from his home was simply one of several reasonable inferences that could have been made from the State's evidence, rendering the State's evidence legally insufficient to prove a violation of community control.

Finally, we observe that violation cases involving the alleged failure to remain confined to an approved residence invariably follow a pattern of the supervising

officer appearing at a residence early in the morning or late at night—when the average person is typically sleeping.  We understand the rationale is to catch those under supervision away from their residences at a time when they should be home.  But the approach of simply knocking on the door and then declaring a violation when no one answers provides strong potential defenses to the person being supervised.  If the supervising officer truly believes that a person under supervision is not home, it would behoove that officer to acquire evidence that corroborates the alleged absence from the residence.

In sum, because the inference that Brown was not home is just one of several reasonable inferences that arise from the evidence of his failure to answer the door, the greater weight of the evidence did not establish a willful and substantial violation of the terms of Brown's community control.  Therefore, we conclude that the trial court abused its discretion by finding Brown in violation and revoking his community control, and we reverse and remand for Brown to be reinstated to community control.

Reversed and remanded with instructions.


SILBERMAN and SLEET, JJ., Concur.