941 So.2d 485 (2006)
Sammy LAWSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-2312.
District Court of Appeal of Florida, Fifth District.
November 3, 2006.
*487 James S. Purdy, Public Defender, and Tomislav David Golik, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
This case presents the question whether a trial court abuses its discretion in finding a willful and substantial violation of probation based on the defendant's dismissal from a court-ordered drug rehabilitation or treatment program due to nonattendance, when the sentencing judge did not specify the number of attempts the defendant would have to successfully complete the program and a time period for compliance. Our answer to this question is that the trial court does not abuse its discretion in this instance and we, therefore, affirm the order of revocation.
Pursuant to a plea agreement, Sammy Lawson entered a plea of nolo contendere to the charges of possession of cannabis with intent to sell and sale of cannabis. He was sentenced in accordance with the agreement to five years' imprisonment suspended upon successful completion of three years' drug offender probation. Condition 40 in the order of probation, which Lawson was accused of violating, specifically provides:
You must enter into, participate in, and successfully complete a [] substance abuse [] alcohol abuse [] Drug Abuse [] Other ___ evaluation and any treatment program subsequently prescribed by the treatment agency to which you are referred, including aftercare program, and be financially responsible for any treatment rendered.[[1]]
According to the testimony presented at the revocation hearing, Lawson enrolled in a treatment program very soon after sentencing. The rules and regulations of this program, which were explained to Lawson before his first session, provide that an individual is subject to discharge after three absences. After missing nine sessions, Lawson was terminated from the program. In an attempt to work with Lawson and his alleged transportation problems, the program administrator reinstated Lawson to the program with the understanding that he miss no more sessions. However, Lawson again missed a class and was discharged from the program. Two days later, the State filed an affidavit indicating that Lawson had violated condition 40 by failing to successfully complete or remain in drug treatment. At the revocation hearing, the trial judge inquired of Lawson why he missed nine classes:
Q. You missed nine classes.
A. Yes, sir.
Q. Tell me why you missed nine classes.
A. Well, the first time I missed three classes, I figured they had already kicked me out. Then I talked to my probation officer. He said to call back to see if I could get back into the class. I called back, and they accepted me back into the program. I tried to like finish all of them. Every week  I had one class a week. I was going to all my *488 classes. I just missed one. I knew I had missed a class.
Q. I'm asking you why you missed nine classes before you were given an extra chance.
A. I have no idea, sir. No transportation.
Based on the trial court's declaration that "[h]is reasons for absences are not persuasive to this court" and the explicit finding that Lawson willfully committed a substantial violation, it is readily apparent that Lawson's testimony, especially his excuse for nonattendance, was not considered by the trial court to be very credible. Accordingly, the trial court revoked Lawson's probation and imposed the suspended sentence of five years in prison. Lawson appeals, contending that because the trial court did not specify how many times he could take the program or a time period for completion, he has until the end of his probationary period to complete the program and is therefore entitled to yet another chance.[2]
In order to properly establish a basis to revoke probation, the state must prove by a preponderance of the evidence that the defendant committed a willful and substantial violation of a condition of probation. State v. Carter, 835 So.2d 259 (Fla. 2002); Thomas v. State, 760 So.2d 1138 (Fla. 5th DCA 2000). In reviewing a trial court's order revoking probation, we must apply the abuse of discretion standard of review, which requires that we "determine whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that [the] violation was both willful and substantial." Carter, 835 So.2d at 262 (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980)). The courts generally agree that unexcused absences from treatment programs are a valid basis for finding a willful and substantial violation of probation. Rawlins v. State, 711 So.2d 137, 137 (Fla. 5th DCA 1998) ("We conclude that a judge may find that two unexcused absences from a treatment program may indeed amount to a material violation."); see also Mills v. State, 840 So.2d 464 (Fla. 4th DCA 2003); Marcano v. State, 814 So.2d 1174, 1176 (Fla. 4th DCA 2002) ("Generally, un-excused absences from required therapeutic programs constitute willful violations of probation.") (citing Boyd v. State, 756 So.2d 1114, 1115 (Fla. 1st DCA 2000); Santiago v. State, 722 So.2d 950, 950 (Fla. 4th DCA 1998)).
We begin our analysis by noting that pursuant to the plea agreement, Lawson specifically agreed to submit to the requirements of drug offender probation. The contours of drug offender probation are defined by section 948.001(4), Florida *489 Statutes (2005), as "a form of intensive supervision . . . with individualized treatment plans." Indeed, participation in, and completion of, specialized treatment plans developed by the Department of Corrections is a primary component of drug offender probation. See § 948.20(1), Fla. Stat. (2005) ("The Department of Corrections shall develop and administer a drug offender probation program which emphasizes a combination of treatment and intensive community supervision approaches and which includes provision for supervision of offenders in accordance with a specific treatment plan."). We agree with Justice Pariente's observations that "[b]ecause each treatment plan is individualized, it is not always realistic for the trial judge to specify time parameters for completion at the time of sentencing." Woodson v. State, 889 So.2d 823, 824 (Fla. 2004) (Pariente, C.J., concurring). Although Justice Pariente was referring to treatment plans for sex offender probation, the treatment plans for drug offender probation are no less individualized.
Despite the difficulty inherent in ordering specific time parameters for completion and limitations on the number of attempts at compliance, decisions from other districts hold that the trial court's failure to do so at sentencing prevents revocation when a defendant is discharged from a treatment program that is a condition of drug offender or sex offender probation. See Singleton v. State, 891 So.2d 1226 (Fla. 2d DCA 2005) (drug offender probation); Davis v. State, 862 So.2d 931 (Fla. 2d DCA 2004) (drug offender probation); Lynom v. State, 816 So.2d 1218 (Fla. 2d DCA 2002) (sex offender probation); see also Mitchell v. State, 871 So.2d 1040 (Fla. 2d DCA 2004) (drug treatment condition). Lawson relies on other decisions that apply the same principles to treatment programs that were not imposed as conditions of drug or sex offender probation. See Quintero v. State, 902 So.2d 236 (Fla. 2d DCA 2005); O'Neal v. State, 801 So.2d 280 (Fla. 4th DCA 2001); Dunkin v. State, 780 So.2d 223 (Fla. 2d DCA 2001); Butler v. State, 775 So.2d 320 (Fla. 2d DCA 2000); Salzano v. State, 664 So.2d 23 (Fla. 2d DCA 1995). We are not bound by these decisions, and we respectfully disagree with them. We will endeavor to explain why.
Although not explicit in their explanation of the rationale for the general principles they adopt, the courts seem to premise these decisions on the requirement that the defendant must willfully violate the conditions of probation. The courts reason that if the sentencing court does not set a time frame for completion or specifically limit the number of attempts at compliance, defendants do not have sufficient notice of what is required in order to comply and, therefore, they cannot willfully violate.
While we certainly agree that defendants should receive fair notice of conduct that may result in a violation so that they may guide their actions accordingly, the concept of fair notice does not require the most comprehensive, inclusive, and detailed notice conceivable. We adopt the view that fair notice can be satisfied by conditions of probation that provide reasonable individuals of common intelligence the basis to know and understand its meaning. See Ertley v. State, 785 So.2d 592 (Fla. 1st DCA 2001); Britt v. State, 775 So.2d 415 (Fla. 1st DCA 2001). Under this view, conditions of probation do not have to be precise to the point of obtrusiveness in order to afford fair notice to the probationer and, therefore, it is not necessary for the sentencing court to catalogue each and every detail or circumstance that may form the basis of a violation. In essence, conditions of probation *490 should be written and read with a measure of common sense so that the fair notice requirement does not provide refuge for defendants who deliberately turn a blind eye to, or eagerly profess ignorance of, the obvious consequences of their actions or inactions.
The rationale we adopt is not new or novel; courts in other jurisdictions have adopted it. The federal courts, for example, have decided the issue under the umbra of the due process clause and its fair warning doctrine. In United States v. Gallo, 20 F.3d 7 (1st Cir. 1994), the court considered whether a condition of probation that provided in pertinent part that "[d]efendant shall continue to submit to proper psychiatric treatment, inclusive of medication," put the defendant on notice that a refusal to follow doctor's instructions and submit to hospitalization would constitute a violation of the probation order. The court held that although the condition of probation did not specifically warn the defendant that his refusal to be hospitalized could result in revocation, a common-sense reading of the condition gave fair warning to the defendant of the consequences of his refusal. The court explained:
When, as now, a court order is read to proscribe conduct that is not in itself unlawful, the dictates of due process forbid the forfeiture of an actor's liberty by reason of such conduct unless he is given fair warning. Nevertheless, the fair warning doctrine does not provide a safe harbor for probationers who choose to ignore the obvious.
Furthermore, though a probationer is entitled to notice of what behavior will result in a violation, so that he may guide his actions accordingly, fair warning is not to be confused with the fullest, or most pertinacious, warning imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail. Conditions of probation may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of probation can be written  and must be read  in a commonsense way.
Id. at 12 (citations omitted); see also United States v. Johnson, 446 F.3d 272, 280-81 (2d Cir.), cert. denied, ___ U.S. ___, 127 S.Ct. 425, ___ L.Ed.2d ___ (2006); United States v. Balon, 384 F.3d 38, 43 (2d Cir. 2004); United States v. Arcadipane, 41 F.3d 1, 5 (1st Cir. 1994); Wilfong v. Commonwealth, 175 S.W.3d 84, 97 (Ky.Ct.App. 2004); Commonwealth v. Kendrick, 446 Mass. 72, 841 N.E.2d 1235, 1237-38 (2006).
Reading condition 40 in a "commonsense way," a reasonable person of common intelligence would understand that he or she must undertake compliance as soon as probation is ordered. This means that the defendant must immediately submit to any necessary evaluation or testing process and enter the prescribed treatment program as soon as he or she can be placed into it. Indeed, the record clearly indicates that this was Lawson's understanding: he did enter the prescribed drug treatment program from which he was dismissed very soon after he was placed on probation; he was specifically advised by his probation officer that if he missed a certain number of classes he would be terminated from the program; and he was advised that termination would be considered a violation of his probation.[3] The *491 provisions of condition 40 do not give Lawson until the last tick of the clock and as many chances as he desires to complete the drug treatment program.
We believe that the view we adopt comports with the primary goals of probation, which are to: 1) rehabilitate the criminal offender so that in the future his or her conduct will more likely conform to societal standards; 2) protect society from future criminal conduct by the offender; and 3) protect the rights of crime victims. Woodson v. State, 864 So.2d 512, 516 (Fla. 5th DCA), review dismissed, 889 So.2d 823 (Fla. 2004). As we explained in Woodson:
It makes no sense to release the offender into society on a lengthy term of probation only to allow the offender the discretion to undertake treatment several years later toward the end of the probationary period. Releasing a sex offender, untreated, does not alleviate the concern that he or she will reoffend and affords no protection to society. Moreover, a requirement that provides additional chances for treatment in the future before expiration of the probationary period after willful failure to actively participate in and complete a sex offender treatment program, simply because the offender expresses a willingness to comply at a later date, opens the door to mischievous manipulation by the offender and thwarts all of the goals of probation.
864 So.2d at 516. We readily acknowledge that Woodson involved mandatory conditions of sex offender probation, but we think the rationale is no less applicable to instances where defendants fail to participate in and complete court-ordered treatment programs intended to help rehabilitate them and prevent future misconduct.
If we reduce Lawson's argument to its essence, Lawson is actually telling us that he will be the one to decide when he submits to drug treatment and that he will be the one to decide how many chances he will have to complete it. We simply cannot accept the perverse notion that such decisions should be left to the whim or caprice of any criminal defendant, much less one like Lawson who has twice thumbed his nose at the trial court, his drug counselor, and his probation officer. "Probation is a matter of grace," McCarthren v. State, 635 So.2d 1005, 1006 (Fla. 5th DCA 1994), that is ordered if "it appears to the court . . . that the defendant is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law." § 948.01(2), Fla. Stat. (2006); Landeverde v. State, 769 So.2d 457, 462 (Fla. 4th DCA 2000). It would be anomalous, to say the least, to allow the trial court's failure to specify the obvious to be used as a refuge for miscreants and slackers like Lawson who eagerly accept the grace of probation with little or no intention of complying with the obligations they promised to fulfill in exchange for it. We believe that the argument advanced by Lawson defies common sense, defeats the ends of justice, and does little to further the goal of rehabilitating offenders so they can conform to the normative standards of behavior demanded by a society of law-abiding citizens. Therefore, we totally reject it.
We conclude that condition 40 requires the court-ordered treatment program to be started as soon as the defendant can be placed into the program. Whether more time should be given to start the program, *492 or more attempts allowed after initial failure due to willful noncompliance, are matters that should be left to the sound discretion of the trial court when considering an appropriate sanction in revocation proceedings. See Woodson, 864 So.2d at 517 ("If immediate initial attempts are unsuccessful and the defendant expresses a willingness to try again, other chances at compliance are a matter that should be left to the sound discretion of the trial court.") Based on the evidence and testimony in the record, the State clearly met its burden of proving that Lawson willfully and substantially violated condition 40. Accordingly, the trial court did not abuse its discretion in revoking Lawson's probation. We affirm the order of revocation.
We certify direct conflict with the decisions in Quintero, Singleton, Davis, Lynom, O'Neal, Dunkin, Butler, and Salzano. We also certify to the Florida Supreme Court the following question, which we consider to be a matter of great public importance:
DOES A TRIAL COURT ABUSE ITS DISCRETION IN FINDING A DEFENDANT, WHO IS DISCHARGED FROM A COURT-ORDERED DRUG TREATMENT PROGRAM FOR NONATTENDANCE, IN WILLFUL VIOLATION OF PROBATION WHEN THE SENTENCING COURT DID NOT SPECIFY THE NUMBER OF ATTEMPTS THE DEFENDANT WOULD HAVE TO SUCCESSFULLY COMPLETE THE PROGRAM AND IMPOSE A TIME PERIOD FOR COMPLIANCE?
AFFIRMED. QUESTION CERTIFIED.
ORFINGER and TORPY, JJ., concur.
NOTES
[1] Lawson notes that the boxes were not marked as to which program he would complete. Based on other provisions in the order of probation that require Lawson to participate in a drug treatment program, we believe that Lawson clearly understood and agreed when he executed his plea agreement and entered his plea that he would participate in, and successfully complete, a drug treatment program.
[2] Lawson also appeals the finding that he violated condition 2 of his probation by failing to pay $50.00 toward the cost of supervision each month. Because the State failed to establish that Lawson had the ability to pay that amount, we believe that the trial court abused its discretion in finding that Lawson willfully violated this condition. See Edwards v. State, 892 So.2d 1192, 1194 (Fla. 5th DCA 2005) ("When the violation is for failure to pay restitution or costs, the State must adduce evidence of [the probationer's] ability to pay to demonstrate willfulness."). However, our review of the record convinces us that based only on the finding that Lawson willfully violated condition 40, the trial court would have revoked Lawson's probation and imposed the suspended sentence. See Akins v. State, 853 So.2d 1118 (Fla. 4th DCA 2003); McPherson v. State, 530 So.2d 1095 (Fla. 1st DCA 1988) (holding that remand for reconsideration of the order revoking probation or the sentence is not necessary where the appellate court is convinced that neither would be affected by the deletion of single violation); Wilson v. State, 506 So.2d 1170 (Fla. 3d DCA 1987) (same); see also Jennings v. State, 665 So.2d 377 (Fla. 4th DCA 1996). Accordingly, affirmance of the order of revocation is appropriate.
[3] See Mitchell v. State, 717 So.2d 609, 611 (Fla. 4th DCA 1998) ("During the initial interview at the agency, the defendant contracted to enter the program and was instructed that under the contract he could only miss three sessions to be in compliance with the program rules. The defendant was further instructed that if he had to miss a class he was required to call 24 hours in advance to inform the staff. The defendant acknowledged that his first class was scheduled in May. Thus, there is record evidence that the defendant was to start the program immediately after being placed on probation.").