969 So.2d 222 (2007)
Sammy Lee LAWSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-2423.
Supreme Court of Florida.
October 25, 2007.
*225 James S. Purdy, Public Defender, and Kevin Richard Holtz, Assistant Public Defender, Daytona Beach, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Pamela Jane Koller and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
PARIENTE, J.
We have for review the decision of the Fifth District Court of Appeal in Lawson v. State, 941 So.2d 485 (Fla. 5th DCA 2006). In its decision, the district court certified conflict with Singleton v. State, 891 So.2d 1226 (Fla. 2d DCA 2005), Davis v. State, 862 So.2d 931 (Fla. 2d DCA 2004), and Salzano v. State, 664 So.2d 23 (Fla. 2d DCA 1995), and certified the following question as one of great public importance:
DOES A TRIAL COURT ABUSE ITS DISCRETION IN FINDING A DEFENDANT, WHO IS DISCHARGED FROM A COURT-ORDERED DRUG TREATMENT PROGRAM FOR NONATTENDANCE, IN WILLFUL VIOLATION OF PROBATION WHEN THE SENTENCING COURT DID NOT SPECIFY THE NUMBER OF ATTEMPTS THE DEFENDANT WOULD HAVE TO SUCCESSFULLY COMPLETE THE PROGRAM AND IMPOSE A TIME PERIOD FOR COMPLIANCE?
Lawson, 941 So.2d at 492. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
For the reasons that follow, we answer the certified question in the negative and conclude that a trial court has discretion to find a defendant in willful and substantial violation of probation for being discharged from a court-ordered drug treatment program for nonattendance even if the sentencing court fails to specify the number of chances the defendant would have to complete the program or impose a time period for compliance. To the extent the conflict cases apply a per se rule that a trial court abuses its discretion in finding a willful and substantial violation of probation for being discharged from a court-ordered drug treatment program where the number of attempts allowed or time for completion is not specified in the order, we disapprove the reasoning of those decisions.[1]

*226 FACTS AND PROCEDURAL HISTORY
Sammy Lawson was charged by information with one count of possession of cannabis with intent to sell and one count of sale of cannabis in two separate cases. On June 1, 2004, Lawson signed waivers of rights and agreements to enter a plea in both cases. Lawson agreed to plead no contest to each charge, be adjudicated guilty on each count, and be sentenced to five years' imprisonment on each count to run concurrently. Importantly, the plea agreement suspended the sentences upon successful completion of three years of drug offender probation.
On June 11, 2004, the trial court issued orders in both cases adjudicating Lawson guilty of the charges and placing him on drug offender probation pursuant to the terms of the plea agreement. The probation orders required Lawson to comply with a number of probation conditions, including:
2) You will pay to the State of Florida the amount of $50.00 (plus 4% surcharge) per month toward the cost of your supervision.
. . . .
10) You will submit to and be financially responsible for drug testing and participate in a drug treatment program, including residential and aftercare; as directed by your Supervising Officer.
. . . .
21) You will enter and successfully complete Non-secure or inpatient drug treatment if deemed appropriate by your Drug Offender Probation Officer.
. . . .
40) You must enter into, participate in, and successfully complete a [] substance abuse [] alcohol abuse [] Drug Abuse [] Other _____ evaluation and any treatment program subsequently prescribed by the treatment agency to which you are referred, including aftercare program, and be financially responsible for any treatment rendered. (TASC)[[2]]
On January 21, 2005, Lawson's probation officer, John McSweeney, filed an Affidavit of Violation of Drug Offender Probation with the court. The affidavit *227 alleged, among other things, that Lawson violated a special condition,[3] Condition (40), of his probation orders "by failing to successfully complete or remain in drug/alcohol treatment until the provider determines that treatment is no longer necessary." This violation was supported by an allegation that Lawson was discharged early from The Western Judicial Drug Treatment Program on January 19, 2005.[4]
On June 1, 2005, the trial court held a probation revocation proceeding in which Officer McSweeney testified as to Lawson's absences at the drug treatment program. The testimony revealed the following:
Lawson enrolled in a treatment program very soon after sentencing. The rules and regulations of this program, which were explained to Lawson before his first session, provide that an individual is subject to discharge after three absences. After missing nine sessions, Lawson was terminated from the program. In an attempt to work with Lawson and his alleged transportation problems, the program administrator reinstated Lawson to the program with the understanding that he miss no more sessions. However, Lawson again missed a class and was discharged from the program. . . . At the revocation hearing, the trial judge inquired of Lawson why he missed nine classes:
Q. You missed nine classes.
A. Yes, sir.
Q. Tell me why you missed nine classes.
A. Well, the first time I missed three classes, I figured they had already kicked me out. Then I talked to my probation officer. He said to call back to see if I could get back into the class. I called back, and they accepted me back into the program. I tried to like finish all of them. Every weekI had one class a week. I was going to all my classes. I just missed one. I knew I had missed a class.
Q. I'm asking you why you missed nine classes before you were given an extra chance.
A. I have no idea, sir. No transportation.
Lawson, 941 So.2d at 487-88.
The trial court found that
the defendant [wa]s in violation of his probation, a substantial violation. Officer McSweeney from the Department of *228 Corrections testified that he was the supervisor of this defendant, that he was instructed on 7/16/04 of the conditions of his probation, one of those conditions being condition 40. The defendant was on drug offender probation, was assigned to a particular class at western judicial, and that he was unsuccessfully discharged. His reasons for absences are not persuasive to this Court. Therefore he is in violation of his probation.
Accordingly, the court revoked Lawson's probation and reinstated the five-year sentences, to run concurrently for each crime, with gain time earned and credit for time served.[5]
On appeal, the Fifth District affirmed the revocation based only on Lawson's violation of Condition (40)the failure to complete the court-ordered drug treatment program. The court agreed that the State met its burden of proving that Lawson willfully and substantially violated his probation "[b]ased on the evidence and testimony in the record." Lawson, 941 So.2d at 492. Despite the fact that the probation orders failed to articulate the number of attempts the defendant had to complete the program or a time period for compliance, the Fifth District concluded that the decision to revoke probation in this circumstance is appropriately within the sound discretion of the trial court. See id. at 491-92. The court stated that a defendant is not automatically entitled to either wait until the last minute or be given additional chances to complete the program; rather, a "commonsense" reading of the probation orders put the defendant on notice that compliance must be undertaken as soon as probation is ordered. Id. at 489-90. Because the defendant had adequate notice, the failure to include these specific parameters within the probation orders should not strip the trial court of its discretion to revoke probation in these circumstances. See id. at 491-92.

ANALYSIS
The issue we must decide is whether it is within the discretion of the trial court to find a defendant in willful and substantial violation of probation for being discharged from a court-ordered drug treatment program for nonattendance, even if the sentencing court did not specify the number of chances the defendant would have to successfully complete the program or impose a time period for compliance. In other words, does a sentencing court's failure to be specific in the probation order on the number of attempts or time period for completing the drug treatment program put the probationer on adequate notice *229 that being discharged from the treatment program for willful nonattendance could result in the revocation of his or her probation.
Generally, an appellate court applies an abuse of discretion standard when reviewing a trial court's decision to revoke probation. See, e.g., State v. Carter, 835 So.2d 259, 262 (Fla.2002). Although this case involves the revocation of probation, the issue presented by the parties is a question of law. Accordingly, the Court applies the de novo standard of review. See Koile v. State, 934 So.2d 1226, 1229 (Fla.2006). We first review this Court's jurisprudence as it relates to a trial court's discretion in both granting and revoking probation. We then discuss the various circumstances in which the trial court can require the completion of a drug treatment program and demonstrate, based on a review of several district court decisions, how the unique circumstances of each case favor giving broad discretion to the trial court to make decisions on revocation of probation based on the failure to complete a court-ordered drug treatment program. Finally, we apply this analysis to the facts at issue here in order to decide whether the trial court abused its discretion in revoking Lawson's drug offender probation.

I. Trial Court Discretion in Granting and Revoking Probation
This Court has often stated that the grant of probation "rests within the broad discretion of the trial judge and is a matter of grace rather than right." Bernhardt v. State, 288 So.2d 490, 494 (Fla. 1974); accord State ex rel. Roberts v. Cochran, 140 So.2d 597, 599 (Fla.1962). Because probation is a "matter of grace," even where statutes authorize a grant of probation to those who have been found guilty of criminal violations, trial courts are not required to extend the privilege. Roberts v. State, 154 So.2d 695, 696-97 (Fla. 2d DCA 1963). Typically, a trial court exercises its discretion to grant probation to a criminal defendant "on the basis of a pre-sentence investigation which suggests that he [or she] is not likely to repeat his [or her] criminal conduct and could, most likely, be rehabilitated while at liberty under supervision." Cochran, 140 So.2d at 599. This is because "[t]he underlying concept of probation is rehabilitation rather than punishment." Bernhardt, 288 So.2d at 495. As we discussed in Bernhardt, "[t]he purpose of the granting of probation . . . is rehabilitation of one who has committed the crime charged without formally and judicially branding the individual as a convicted criminal and without consequent loss of civil rights and other damning consequences." Id.
Just as there is broad discretionary power to grant the privilege of probation, the trial court has equally broad discretion to revoke it. See Cochran, 140 So.2d at 599 ("The trial judge who prescribes probation in lieu of immediate imprisonment is allowed a broad judicial discretion to determine whether the conditions of the probation have been violated, and, therefore, whether the revocation of probation is in order."); Bronson v. State, 148 Fla. 188, 3 So.2d 873, 874 (1941). As we noted in Cochran, the discretion to revoke probation "is necessarily broad and extensive in order that the interests of society may be protected against a repeating offender or one who disregards the conditions stipulated for his [or her] remaining at large." 140 So.2d at 599 (emphasis supplied). Although the power of the trial court in the area of probation revocation is broad and extensive, it "is not unbridled and should not be arbitrarily exercised." Id.
This Court has repeatedly held, as early as 1947 in Brill v. State, 159 *230 Fla. 682, 32 So.2d 607 (1947), and later in accordance with the United States Supreme Court's decisions in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), that the power to revoke probation must be exercised in accordance with due process principles. See Bernhardt, 288 So.2d at 495; Cochran, 140 So.2d at 599. These principles require the trial court to provide a defendant with notice of the alleged violation and an opportunity to be heard prior to revoking probation. See Brill, 32 So.2d at 609.[6]
In addition to the procedural due process that is required at the time of an alleged violation, the trial court and the probation order must also adequately place the probationer on notice of conduct that is both required and prohibited during the probationary period. See Hines v. State, 358 So.2d 183, 185 (Fla.1978); see also Zachary v. State, 559 So.2d 105, 106 (Fla. 2d DCA 1990) (striking a condition for vagueness where the order did not "sufficiently apprise [probationer] of what she must do or refrain from doing"); Pratt v. State, 516 So.2d 328, 328 (Fla. 2d DCA 1987) (finding condition "insufficient to apprise [probationer] of which otherwise lawful acts are prohibited"); Mastick v. State, 409 So.2d 203, 204 (Fla. 3d DCA 1982) ("A probation order must sufficiently instruct the probationer as to what he must do or refrain from doing while on probation."). As this Court stated in Hines, "[f]undamental fairness requires that a defendant be placed on notice as to what he [or she] must do or refrain from doing while on probation." 358 So.2d at 185.
The due process protection of adequate notice is not only found in the constitution, see art. I, § 9, Fla. Const., but also in the Florida Statutes. See, e.g., § 948.06(1)(a), Fla. Stat. (2005) (setting forth the process for assessment and resolution of probation violations). For instance, section 948.06(1)(a) authorizes the arrest of a probationer and subsequent revocation of probation upon adequate proof if "there are reasonable grounds to believe that a probationer or offender in community control has violated his or her probation or community control in a material respect." Id. (emphasis supplied). Although the Legislature failed to define "material" violation, this Court has stated that "a violation must always be willful and substantial to produce a revocation." State v. Meeks, 789 So.2d 982, 987 (Fla. 2001); accord Carter, 835 So.2d at 261. In essence, the right to receive adequate notice of the conditions of probation is in part realized through the requirement that a violation be substantial and willful to justify revocation. Indeed, a defendant could not willfully violate a condition of probation without being on adequate notice of the conduct that is prohibited. See Rothery v. State, 757 So.2d 1256, 1259 (Fla. 5th DCA 2000) (holding that a violation of probation could not be willful if the probationer "had neither notice nor knowledge of the substance of the rule").
As is evident from our precedent, the conflict issue and the certified question in this case require us to balance two competing interests: the due process interests of a criminal defendant in receiving adequate notice of what conduct will subject him or her to revocation of probation and the *231 interests of the trial court in having broad discretion both to impose conditions and determine when those conditions have been violated. Accordingly, we next discuss how these competing interests come into play when a criminal defendant is placed on probation and ordered to complete a drug treatment program in lieu of imprisonment.

II. Court Ordered Drug Treatment
There are three avenues in which the trial court may order a probationer to complete a drug treatment program: (1) as a special condition of ordinary probation; (2) as a condition of drug offender probation under section 948.20, Florida Statutes (2005); or (3) as part of a "treatment based drug court program" under section 397.334, Florida Statutes (2005). Although the conflict cases at issue here only involve drug treatment programs as outlined in (1) and (2) above, a review of the statutes authorizing drug offender probation and the use of drug courts indicates the level of flexibility that is necessary in dealing with probationers with substance abuse problems.
Chapter 948, Florida Statutes (2005), offers a detailed statutory approach to "Probation and Community Control." Within this chapter, the Legislature created a specific scheme to address defendants who are "chronic substance abusers," by authorizing trial courts to "stay and withhold the imposition of sentence and place the defendant on drug offender probation." § 948.20, Fla. Stat. Indeed, in Jones v. State, 813 So.2d 22 (Fla.2002), we reiterated that "treatment and intensive surveillance, rather than incarceration, is available to defendants who qualify [for drug offender probation] based on the nonviolent nature of the crime . . . and their status as chronic substance abusers." Id. at 24.
As defined by statute, drug offender probation is "a form of intensive supervision which emphasizes treatment of drug offenders in accordance with individualized treatment plans." § 948.001(4), Fla. Stat. (2005). This is mirrored in section 948.20, which mandates that the Department of Corrections
develop and administer a drug offender probation program which emphasizes a combination of treatment and intensive community supervision approaches and which includes provision for supervision of offenders in accordance with a specific treatment plan. The program may include the use of graduated sanctions consistent with the conditions imposed by the court. Drug offender probation status shall include surveillance and random drug testing, and may include those measures normally associated with community control, except that specific treatment conditions and other treatment approaches necessary to monitor this population may be ordered.
§ 948.20(1), Fla. Stat. (2005).
Additionally, the Legislature authorized the creation of "treatment-based drug court programs." § 397.334, Fla. Stat. (2005). As with drug offender probation, the focus of the drug court program is to "appropriately address the severity of the identified substance abuse problem through treatment plans tailored to the individual needs of the participant." § 397.334(1), Fla. Stat. (2005). Furthermore, the Legislature mandated that the drug court programs comport with "therapeutic jurisprudence principles," § 397.334(2), Fla. Stat. (2005), adhering to ten key components, including the importance of "[o]ngoing judicial interaction with each drug court program participant." § 397.334(2)(g), Fla. Stat. (2005).
Based on these statutory provisions, the Legislature's concern with court-ordered *232 drug treatment programs, whether it is drug offender probation or the treatment-based drug court program, is clearrehabilitation pursuant to an individualized treatment plan. Thus, the Legislature has determined that rehabilitating drug offenders should be the primary focus and such a goal is achieved through individualized treatment plans that are specifically tailored to each probationer. And although these statutory provisions relate only to drug offender probation and the drug court program, these discretionary principles are equally applicable if the drug treatment program is a special condition of a standard probation order. Accordingly, because the circumstances of treating each substance abuse problem are unique to that individual, trial courts must be able to operate with an element of flexibility regardless of whether completion of a drug treatment program is required through a standard probation order, as part of drug offender probation, or through the treatment-based drug court program.

III. District Court Decisions
A review of a series of Second District decisions, including the certified conflict cases, reveals that the Second District follows a per se rule that a trial court may never find that a probationer substantially and willfully violated probation after being discharged from a drug treatment program for nonattendance if the probation order fails to specify the number of chances allowed or set a specific time parameter for completion.[7] Essentially, the Second District concludes that being discharged from a drug treatment program in these circumstances can never amount to a willful and substantial violation and therefore revocation is a per se abuse of discretion. However, as these decisions indicate, the underlying factual circumstances, including the type of program being ordered, the level of actual compliance with both the program and its rules, the reasons for being discharged, and the probationer's willingness and commitment to being rehabilitated are distinct and unique in each case.
For example, in Singleton, the first certified conflict case, the trial court resentenced Singleton to twenty-four months' drug offender probation and ordered him to "re-enter and complete the Center for Rational Living Drug Treatment Program." 891 So.2d at 1227-28. Singleton failed to join the program as ordered but testified at the revocation hearing that he failed to attend because the program evaluator told him when he attended an evaluation session "that he did not want to set him up for failure if he could not pay for treatment because he did not have a job." Id. at 1228. The Second District reversed the trial court's order revoking probation, reiterating that the "court has consistently held that failure to enter and complete a drug treatment program does not amount to a willful and substantial violation of probation when the probation order does not prescribe a period of time for entrance or completion." Id. Importantly, the court noted that the State failed to prove a willful and substantial violation where Singleton offered unrebutted testimony that he failed to enter the program because he was unable to pay. See id. at 1228-29.
In Davis, the next certified conflict case, Davis was convicted of delivery and possession of cocaine and was placed on twenty-four *233 months' drug offender probation. 862 So.2d at 933. The probation order included conditions requiring Davis to complete and pay for tests used to determine whether he had a treatable problem with alcohol or drugs within thirty days and successfully complete any specific program that was deemed necessary from such a test. See id. Davis completed the test within the thirty days and was then ordered to attend the DACCO Level 1 Drug Education Program but was discharged after two months for "failing to comply with program rules" by attending only one of the required eight sessions. Id. However, Davis's mother testified that he missed the DACCO classes because he was attending physical therapy three mornings a week due to an auto accident injury. See id. The Second District held that the trial court abused its discretion in revoking probation because the order failed to require Davis to complete the program within a certain period of time and there was sufficient time remaining during the probationary period. Id. at 934.
In Salzano, the third certified conflict case, the trial court ordered Salzano to "be screened for drug treatment and complete any counseling or treatment as recommended or required." 664 So.2d at 24. Salzano was screened and approved for a residential treatment program at Operation PAR, was admitted to the program on May 2, 1994, but was discharged for making sexual comments to another resident and violating the rules by being found in the detox area on four occasions. Id. Although Salzano denied making the comments and testified that he was only in the detox area to obtain medication as he was told to do, the trial court revoked his probation. The Second District held that the trial court abused its discretion in finding a willful violation where Salzano expressed a willingness to complete the treatment and the order failed to "specify the period within which [Salzano] was to complete the program and how many chances he would be given to obtain success." Id. Importantly, the Second District noted that Salzano's probation officer testified that he repeatedly expressed that he needed treatment, that she failed to explain to him that completing PAR was a condition of his probation, and that he was living at another residential treatment program at the time the affidavit of probation violation was filed. Id.
Additionally, several Second District cases that were not originally certified in conflict with Lawson are informative. In Spayde v. State, 899 So.2d 1274 (Fla. 2d DCA 2005), Spayde was sentenced to six months' community control followed by eighteen months' drug offender probation for multiple drug-related charges, and ordered to "successfully complete a specified residential drug treatment program" and "remain in the county jail until an opening became available in the drug treatment program." Id. at 1275. On the day he first reported to the drug treatment program, Spayde absconded and was arrested some time later. See id. Although the Second District concluded that the trial court abused its discretion in finding that Spayde violated the condition requiring him to complete the program because there was sufficient time remaining during the probationary period to complete it, the court affirmed the revocation because Spayde violated the condition that he reside at the treatment program by leaving the program without permission. See id.
In Anderson v. State, 942 So.2d 1015 (Fla. 2d DCA 2006), the trial court order contained a special condition that required Anderson "to pay for tests used to determine whether you have any treatable problem with alcohol or any drug," and to successfully complete any treatment program *234 that was recommended. Id. at 1016. A PAR residential program was recommended but Anderson was discharged for noncompliance. See id. at 1017. At the probation revocation hearing, the program counselor testified that all of his drug screens were negative and that although Anderson attended all the required sessions, he was discharged for failing to "participate" in those sessions and because of minor rule infractions, such as horseplay. Id. The trial court revoked Anderson's probation for failing to complete the program and for failing to comply with the program's rules. The Second District once again held that the trial court abused its discretion in revoking probation for failing to complete a program "when the conditions of probation . . . did not specify that the program be completed within a certain time frame or within a certain number of attempts" and there was sufficient time remaining in the probationary period for completion. Id. at 1017-18.
Lastly, in Jones v. State, 744 So.2d 537 (Fla. 2d DCA 1999), the trial court ordered Jones to "enter and successfully complete residential treatment program (DAY TOP)." Id. at 538. However, he was discharged from the twelve-month program after eleven months because he threatened another resident during a group counseling session, and failed to follow the program director's order to admit his transgression in front of the entire community of residents and outline a plan as to how he would prevent future transgressions. See id. Significantly, Jones testified that he failed to speak to the entire community or adopt a plan because he was still angry and that he needed and wanted to continue his treatment. See id. The Second District concluded that the trial court abused its discretion in revoking Jones' probation where he expressed a willingness to complete his treatment and the order failed to "specify the period within which appellant was to complete the program or how many chances he would have to obtain success." Id.
At first glance, the above review indicates that in some respects each case is similarthe trial court's order requires the defendant to complete a drug treatment program but fails to limit the number of chances or set a time parameter for completion. However, an in-depth review discloses significant factual distinctions in the circumstances surrounding the discharge from the program, how close the probationer was to completing the program, and the justifications offered by the probationer for the violation. Despite the unique facts in these decisions, the Second District has clearly adopted a per se rule that a trial court may never find that a probationer substantially and willfully violated probation after being discharged from a drug treatment program for nonattendance if the probation order fails to specify the number of attempts allowed or set a specific time parameter for completion. This bright line rule is contrary to this Court's precedent that supports broad discretion to the trial court in the area of probation revocation.
We have previously warned of the inherent problems in establishing bright line rules in the context of a trial court's decision to revoke probation. See Carter, 835 So.2d at 261. In Carter, the Court disapproved a district court decision that applied a per se rule that the failure to file a single monthly report can never amount to a substantial violation justifying probation revocation. See id.[8] The Court stated that

*235 [s]uch a per se rule strips the trial court of its obligation to assess any alleged violations in the context of a defendant's case. Trial courts must consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence. In other words, the trial court must review the evidence to determine whether the defendant has made reasonable efforts to comply with the terms and conditions of his or her probation.
Id. We further explained that each situation is unique; in some cases, a violation clearly rises to the level of substantial which justifies probation revocation and, in others, there are extenuating circumstances or satisfactory reasons that would make revocation patently unfair. See id. at 262. As the Court noted, the varying circumstances of each case
demonstrate why it makes sense to allow the trial court the discretion to weigh each situation without the mandates of a bright line rule requiring revocation or preventing it. The trial court is in a better position to identify the probation violator's motive, intent, and attitude and assess whether the violation is both willful and substantial.
Id.
We continue to adhere to the principle that trial courts must have broad discretion in deciding whether to revoke a defendant's probation. We conclude that a trial court could be well within its discretion in finding a willful and substantial violation where a defendant fails to complete a court-ordered drug treatment program, even though the order did not specify how many chances the defendant had to complete the program or when it had to be completed. Probation orders need not include every possible restriction so long as a reasonable person is put on notice of what conduct will subject him or her to revocation. We agree with the Fifth District that a condition of probation should "provide reasonable individuals of common intelligence the basis to know and understand its meaning." Lawson, 941 So.2d at 489; accord Britt v. State, 775 So.2d 415, 417 (Fla. 1st DCA 2001) (stating that two probation conditions were "sufficiently precise to `give [ ] a person of ordinary intelligence fair notice of what constitutes forbidden conduct.'") (quoting Brown v. State, 629 So.2d 841, 842 (Fla.1994)). Although the conditions should be clearly set out and must mean what they say, every detail need not be spelled out and the language should be interpreted in its common, ordinary usage. See Rothery, 757 So.2d at 1259. Thus, a probation order that requires the completion of a drug treatment program but fails to specify time parameters should be read in a commonsense manner. Accordingly, a probationer who has been given the privilege of being placed on probation, in lieu of serving jail time, is put on adequate notice that the treatment program should be undertaken at the beginning of the probationary period and that, if he or she is discharged for nonattendance, he or she may not have another chance to complete the program.
As previously discussed, for those drug-addicted defendants who are making genuine attempts to recover from their illnesses, flexibility of the treatment program is vital to their success. However, just as a defendant who unfortunately relapses while making good faith efforts at rehabilitation should not be subject to a bright line rule requiring the automatic revocation of *236 his or her probation no matter the circumstances, a defendant who flouts the system by making little or no effort should not be able to escape the consequences of his or her noncompliance through a per se rule that prohibits the trial court from revoking simply because the order failed to specify the time for completion. This is the essence of the Fifth District's reasoning and we agree with this approach.
We caution, however, that our decision today should not be interpreted as a complete rejection of detailed orders or more specific conditions. In fact, we take this opportunity to encourage trial courts to be as specific as possible so that probationers are on clear notice of exactly what they are required to do and what actions will subject them to revocation. However, we reject a bright-line rule in the context of drug treatment programs because such a rule may undermine the trial court's ability to "consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence." Carter, 835 So.2d at 261.
If we were to require trial courts in every case to specify when a treatment program must be completed or how many chances a probationer has to complete it, a trial court would be without discretion to revoke probation until the number of allowable chances had been reached. For instance, if an order gave a probationer three opportunities or two years to complete a drug treatment program, the trial court would be precluded from revoking probation even where the probationer showed absolutely no willingness to submit to treatment and has been discharged from the treatment program twice without any reasonable excuse. Such a result would undermine the rehabilitative purposes that drug treatment programs are intended to serve. That being said, trial courts should always be mindful of the underlying disease of addiction and aware that at times circumstances make it difficult for the defendant to comply, as many of the above-mentioned Second District cases demonstrate.

IV. This Case
In this case, Lawson was placed on drug offender probation pursuant to section 948.20, which required him to be evaluated and complete a treatment program. Condition (40) of his probation order stated the following:
"You must enter into, participate in, and successfully complete a [] substance abuse [] alcohol abuse [] Drug Abuse [] Other _____ evaluation and any treatment program subsequently prescribed by the treatment agency to which you are referred, including aftercare program, and be financially responsible for any treatment rendered. (TASC)
Lawson argues that because this condition fails to specify either the number of attempts or the time certain he had to complete the program, the trial court was without discretion to find him in willful and substantial violation of his probation for being discharged from the program for nonattendance. However, as just discussed, we conclude that a trial court does not automatically abuse its discretion in revoking a defendant's probation for being discharged from a drug treatment program, even though the order did not specify time parameters. Therefore, we must decide whether, under the facts of this specific case, the trial court abused its discretion in revoking Lawson's probation.
In lieu of serving two concurrent five-year prison sentences, Lawson specifically agreed to comply with the requirements of drug offender probation"a form of intensive supervision which emphasizes treatment of drug offenders in accordance with *237 individualized treatment plans administered by officers with restricted caseloads." § 948.001(4), Fla. Stat. (2005). Lawson's individual plan, which was explained to him by his probation officer, required him to complete the Western Judicial Center program. The probation officer informed Lawson he had to complete the program and attend the classes regularly; otherwise, he would be in violation of his probation.
Lawson was terminated from the program for missing the first nine sessions. He testified at the probation revocation proceeding that he had "no idea" why he missed these classes, suggesting that he had "[n]o transportation." However, the probation officer reached an agreement with the program director to reinstate Lawson with the understanding that he would again be terminated if he missed one more class. Thereafter, Lawson attended seven consecutive classes, of the twelve that were required, but was discharged when he missed another class. Lawson's probation officer testified that Lawson understood that he was to attend every class and would be terminated if he missed one more session.
Based on the testimony of the probation officer, Lawson was on adequate notice of what the condition required him to do  complete the program at Western Judicial  and what consequences would result if he failed to do so  revocation of his probation. Given the trial court's belief that Lawson's excuses for not attending the required sessions were unpersuasive, it was well within the court's discretion both to find Lawson in substantial and willful violation and to revoke his probation.

CONCLUSION
For all the foregoing reasons, we answer the certified question in the negative and conclude that a trial court has discretion to find a defendant in willful and substantial violation of probation for being discharged from a court-ordered drug treatment program for nonattendance, even if the sentencing court fails to specify the number of chances the defendant would have to complete the program or impose a time period for compliance. Although we encourage trial courts to be detailed and specific in probation orders in order to ensure that a defendant is clearly put on notice of what conduct is both required and prohibited, we cannot adopt a bright line rule in the context of drug treatment programs because to do so would undermine the trial court's ability to assess the unique and distinct factual circumstances of the individual probationer's case.
Accordingly, we approve the Fifth District's decision in Lawson and disapprove the Second District's decisions in Singleton, Davis, Salzano, Spayde, Hardy, Vernon, Yates, Anderson, and Jones, to the extent these decisions applied a per se rule that a trial court abuses its discretion in revoking probation for being discharged from a court-ordered drug treatment program, where the order fails to specify the number of chances to complete the program or time parameters within which the program must be completed.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The Fifth District also certified conflict with several cases that did not involve a drug treatment program. See Quintero v. State, 902 So.2d 236 (Fla. 2d DCA 2005) (domestic violence program); Lynom v. State, 816 So.2d 1218 (Fla. 2d DCA 2002) (sex offender probation); Dunkin v. State, 780 So.2d 223 (Fla. 2d DCA 2001) (sex offender probation); Butler v. State, 775 So.2d 320 (Fla. 2d DCA 2000) (GED program); O'Neal v. State, 801 So.2d 280 (Fla. 4th DCA 2001) (domestic violence program). However, the certified question in this case specifically concerns the revocation of probation after being discharged from a court-ordered drug treatment program. Therefore, we decline to address the certified conflict decisions that involve distinct categories of treatment programs.

However, there are a number of other conflicting Second District decisions that were not certified involving drug treatment programs in which the court also applied a per se rule. See Vernon v. State, 958 So.2d 472 (Fla. 2d DCA 2007); Anderson v. State, 942 So.2d 1015 (Fla. 2d DCA 2006); Spayde v. State, 899 So.2d 1274 (Fla. 2d DCA 2005); Yates v. State, 909 So.2d 974 (Fla. 2d DCA 2005); Hardy v. State, 845 So.2d 335 (Fla. 2d DCA 2003); Jones v. State, 744 So.2d 537 (Fla. 2d DCA 1999).
[2] The acronym TASC stands for "Treatment Alternatives to Street Crime." Gunder v. State, 867 So.2d 565, 565 (Fla. 3d DCA 2004). TASC "is a program designed to divert drug-involved offenders into appropriate community-based treatment programs by linking the legal sanctions of the criminal-justice system to treatment for drug problems." Jerome H. Jaffe & Faith K. Jaffe, Treatment Alternatives to Street Crime (TASC), in 3 Encyclopedia of Drugs, Alcohol & Addictive Behavior 1113, 1113 (2d ed.2001). Essentially, TASC assists the court system in "identifying drug-involved offenders in need of treatment, assessing the nature and extent of their drug use and their specific treatment needs, and referring them to treatment." Id.
[3] This Court has distinguished between special conditions and general conditions on the issue of how much due process is owed to a probationer. See, e.g., State v. Williams, 712 So.2d 762 (Fla.1998). General conditions, which are contained within the Florida Statutes, must be included within the order but need not be orally pronounced at the sentencing hearing. See State v. Hart, 668 So.2d 589, 592 (Fla.1996). Special conditions, which are those not specifically authorized by statute, must be orally pronounced at sentencing before they can be placed in the probation order. See id. The reason for the distinction relates to due process, such that a probationer is imputed with notice as to those conditions that are based upon statute but not as to those conditions that were uniquely drafted for purposes of his or her probation. Thus, in order to satisfy due process and provide a probationer with adequate notice, the trial court must orally pronounce any special condition at sentencing. See id. However, neither Lawson nor the State has alleged any error regarding the oral pronouncements made by the trial court in this case.
[4] On April 19, 2005, the State filed an Amended Affidavit of Violation of Drug Offender Probation, which added a violation of Condition (5), for "failing to live and remain at liberty without violating any law by committing the criminal offense of Ct. I: Possession of Crack Cocaine with Intent to Sell within 1000 feet of a Church, Ct. II: Sale of Crack Cocaine within 1000 feet of a church on 01/04/05."
[5] The trial court also found that Lawson materially violated Condition (2) "by failing to pay the State of Florida the amount of $50.00 per month toward the cost of supervision," for which Lawson is $400 in arrears. However, the Fifth District held that the trial court abused its discretion in finding that he willfully and substantially violated Condition (2) because the State failed to establish that Lawson had an ability to pay that amount. See Lawson, 941 So.2d at 488 n. 2. Additionally, the trial court found that Lawson violated Condition (5) of his probation after being arrested on charges of possession and sale of cocaine. At the probation violation hearing, the State decided not to offer any evidence on this count because of the pending criminal investigation and possible prosecutions. Nevertheless, the trial court included a violation of Condition (5) in its order revoking probation. The Fifth District did not address the violation of Condition (5), most likely because the State conceded in its brief that it offered no evidence as to the violation of that condition at the revocation hearing. Lawson, who is now serving a prison sentence for this criminal violation, does not raise as a separate issue here whether the trial court would have revoked his probation only for the violation of Condition (40). Accordingly, we do not address this issue.
[6] The record in this case reflects that the trial court both notified Lawson of his alleged violation and held a hearing in which he was afforded an opportunity to be heard and respond to the allegations. See Lawson, 941 So.2d at 487-88. Accordingly, the propriety of the procedural due process afforded Lawson at the revocation hearing is not at issue here.
[7] We do not discuss in detail the Second District's decisions in Vernon and Hardy. Although these decisions are in conflict with Lawson because the Second District applied the same per se rule, they contain insufficient facts to contribute to our discussion on this issue.
[8] Although Carter involved a per se rule as to whether a violation could ever be substantial, the Court's broad statements concerning the necessity of trial court discretion in this area of the law are equally applicable here.