# Third District Court of Appeal

## State of Florida

Opinion filed April 3, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-464
Lower Tribunal No. 09-23824I
_____

**Alejandro Diaz,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dava J. Tunis, Judge.

Daniel Tibbitt, for appellant.

Ashley Moody, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for appellee.

Before FERNANDEZ, LOGUE, and SCALES, JJ.

LOGUE, J.

Defendant Alejandro Diaz appeals the trial court's entry of an order revoking his probation and sentencing him to 25.25 years' imprisonment on his underlying crimes. His probation was revoked because, while serving his initial sentence, he was found in possession of a cigarette made from a synthetic cannabinoid, AB-Chimanaca. After careful review of Mr. Diaz's arguments, we affirm.

## I.  BACKGROUND

In 2013, Mr. Diaz pled guilty to attempted premeditated murder with a firearm, conspiracy to commit first degree murder, discharging a firearm from a vehicle, directing activity of a criminal gang, and racketeering. He was sentenced to 10 years' imprisonment followed by 10 years' probation. He was read and signed an order of supervision that cautioned a "violation of any of the conditions" or failure to "live without violating the law" could result in revocation of probation.

On January 27, 2015, a corrections officer at the Miami-Dade County jail found Mr. Diaz in possession of a cigarette made from the synthetic cannabinoid. Mr. Diaz was charged with violating section 951.22(1) of Florida Statutes, which prohibits the smuggling or possession in a county detention facility of various legal and illegal items including clothing, food, alcohol or "any drug or drug of any kind or nature . . . and controlled substances as defined in s. 893.02(4)."

During his probation violation hearing, Mr. Diaz testified he obtained the synthetic cannabinoid from another inmate. He admitted that he knew possession was forbidden in jail and explained he smoked the substance to self-medicate. The trial court found Mr. Diaz willfully and knowingly violated his probation. It then re-sentenced Mr. Diaz to 25.25 years' imprisonment to be followed by 10 years' probation. Mr. Diaz timely appealed.

## II.   ANALYSIS

Mr. Diaz raises three issues on appeal. First, Mr. Diaz claims that the particular synthetic cannabinoid which he possessed was not a controlled substance under section 893.02(4) at the time he possessed it and therefore his possession did not violate section 951.22(1). We recognize that this particular synthetic cannabinoid was not added to the list of controlled substances in section 893.02(4) until several months after it was found in his possession. But, while section 951.22(1) prohibits possession of controlled substances as defined in s. 893.02(4), its prohibition is not limited to only controlled or illegal substances. The statute is designed to prevent the smuggling and surreptitious possession of various legal and illegal contraband by inmates including money, food, clothing, tobacco, alcohol, and, pertinent to this case, "any narcotic, hypnotic, or excitative drug <u>or drug of any kind or nature</u>, including nasal inhalators, sleeping pills, barbiturates, and controlled substances as defined in section 893.02(4)."

3

In full, section 951.22(1) provides:

> <u>It is unlawful</u>, except through regular channels as duly authorized by the sheriff or officer in charge, <u>to introduce into or possess upon the grounds of any county detention facility</u> as defined in s. 951.23 or to give to or receive from any inmate of any such facility wherever said inmate is located at the time or to take or to attempt to take or send therefrom any of the following articles which are hereby declared to be contraband for the purposes of this act, to wit: Any written or recorded communication; any currency or coin; any article of food or clothing; any tobacco products as defined in s. 210.25(12); any cigarette as defined in s. 210.01(1); any cigar; any intoxicating beverage or beverage which causes or may cause an intoxicating effect; <u>any narcotic, hypnotic, or excitative drug or drug of any kind or nature, including nasal inhalators, sleeping pills, barbiturates, and controlled substances as defined in s. 893.02(4);</u> any firearm or any instrumentality customarily used or which is intended to be used as a dangerous weapon; and any instrumentality of any nature that may be or is intended to be used as an aid in effecting or attempting to effect an escape from a county facility.

§ 951.22(1), Fla. Stat. (emphases added). Mr. Diaz admitted he smoked the synthetic cannabinoid at issue to self-medicate. It was therefore a "drug of any kind or nature," whether or not it was illegal.

Next, Mr. Diaz claims that if section 951.22(1)'s prohibition on contraband in detention facilities is construed to include AB-Chimanaca, then the statute is unconstitutionally vague. "To withstand a vagueness challenge, a statute must be specific enough to give persons of common intelligence and understanding adequate warning of the proscribed conduct." <u>State v. Mitro</u>, 700 So. 2d 643, 645

4

(Fla. 1997) (citing Trushin v. State, 425 So. 2d 1126, 1130 (Fla.1983). Under this standard, section 951.22 is not vague.

As we mentioned before, its purpose is to control smuggling and surreptitious possession of various items, legal and illegal. Considered in this light, it is plain to a person of "common intelligence" that this statute prohibits the smuggling or possession of a "drug of any kind or nature," which includes the synthetic cannabinoid at issue here, whether it is a controlled substance or not, just like the statute prohibits the smuggling or possession of food, tobacco, and alcohol. Indeed, Mr. Diaz admitted he knew the synthetic cannabinoid in his possession was contraband. See Hughes v. State, 943 So. 2d 176, 189 (Fla. 3d DCA 2006) (rejecting a vagueness claim and noting "[t]he plain and ordinary meaning of a word can be ascertained by reference to a dictionary."); accord State v. Hagan, 387 So. 2d 943, 945 (Fla. 1980) (noting that the "legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague").

Finally, Mr. Diaz argues that he could not commit a willful and substantial violation before his probationary period began. This argument has previously been considered and rejected by the Florida Supreme Court and other courts. See Stafford v. State, 455 So. 2d 385, 386-87 (Fla. 1984) (concluding that probation could be revoked for a violation occurring during a period of parole even though

5

the term of probation had not yet begun.); <u>Martin v. State</u>, 243 So. 2d 189, 191 (Fla. 4th DCA 1971) ("[T]he court can revoke an order of probation, the term of which has not yet commenced, should the court determine that the defendant probationer has been guilty of misconduct occurring subsequent to the entry of the order of probation."); <u>see, e.g.</u>, <u>Lawson v. State</u>, 969 So. 2d 222, 235 (Fla. 2007) ("Probation orders need not include every possible restriction so long as a reasonable person is put on notice of what conduct will subject him or her to revocation.").

Affirmed.